NEWSPAPERS, INC., and another, Petitioners-Appellants, v. BREIER, Chief of Police, City of Milwaukee, Defendant-Respondent.

Supreme Court

*No. 76–724. Argued March 26, 1979.—Decided May 30, 1979.*
(Also reported in 279 N.W.2d 179.)

418

420

For the appellants there were briefs by *Robert A. Christensen* and *Foley & Lardner* of Milwaukee, and oral argument by *Mr. Christensen.*

For the respondent the cause was argued by *Thomas E. Hayes,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

HEFFERNAN, J.  This action arose out of a request by Joseph W. Shoquist, managing editor of *The Milwau-*

*kee Journal,* for regular access to a number of police records. Harold A. Breier, Chief of Police of the City of Milwaukee, responded to Shoquist's request by granting access to some records and refusing access to others. In the Chief's letter dated July 3, 1974, he stated that the press would be provided, upon demand, the name, age and date of birth of all persons taken into custody, the time the suspect was taken into custody, and the names of the arresting officers. He refused to permit the press access to the records showing the charge on which particular persons were arrested and refused to permit access to the names of informants. Although the newspaper has not agreed to the Chief's intention to withhold information in respect to informants or complainants, the newspaper has never sought to get that information. In the instant case it only asserts the right under sec. 19.21(1) and (2), Stats., to immediate access to the records which show on a chronological and daily basis the charges upon which persons were arrested.

The Chief's reasons for refusing to disclose to the press and to the public the charge upon which a person was arrested were set forth in the letter to Shoquist. The basic stated reason for nondisclosure, possible personal and economic harm to individuals arrested, has remained the rationale for the Chief's position throughout these proceedings. In the letter the Chief stated:

"If the charge to be sought against a person in custody is disclosed, I am aware of possible economic and personal harm to that individual which would result if the charge would become known to employers, credit agencies or even neighbors. Notwithstanding the fact that the charge may subsequently be modified by the District Attorney or that the individual may be subsequently acquitted, the mere disclosure of the basis for the arrest could work as a serious impediment and as the basis for discrimination against the individual in his search for employment or licenses.

"I am informed by counsel that recent court decisions require me to take the possible consequences to the indi-

vidual in custody into account in determining whether to disclose the contents of the charge placed against such individual, and that failure to do so may result in a situation where the Department's ability to maintain arrest records in the first place is severely jeopardized. I know that effective law enforcement requires that the Department maintain a record of the charge under which the subject is taken into custody even though the District Attorney may issue a different charge, and therefore I believe it is my responsibility as the public official responsible for the enforcement of the laws and ordinances of the city and the efficiency of the Department to take all necessary steps to protect the integrity of this information as contained in Department records."

Following the refusal of the Chief of Police to permit the newspaper to inspect the records which would show the charge upon arrest, the newspaper petitioned for a writ of mandamus to compel the disclosure of this information.

The circuit court in its decision concluded that the Chief had made a blanket refusal to permit inspection of records that would show the arrest charge. The court said that this response was unacceptable and stated that the Chief of Police must set forth specific reasons in each case for not disclosing the offense charged. In an addendum to the decision, the court announced that the Chief must, within forty-eight hours after an arrest, make available to the general public and the press the offense for which a person was arrested or provide specific reasons for nondisclosure. The trial judge declined to issue a writ of mandamus and instead treated the petition as requesting declaratory relief. A declaratory judgment was issued, which declared the rights of the parties. The relevant portion of the trial court's judgment provided:

"That within forty-eight hours after the arrest of any person, the plaintiffs are entitled to inspect and copy the records in the possession of the City of Milwaukee Po-

lice Department which indicate the offense for which a person was initially arrested unless the Chief of Police of the City of Milwaukee or his designate refuses to produce the aforementioned records *and* states with particularity the specific reasons for the refusal."

Neither party was satisfied with the remedy. The newspaper appealed, reasserting its claim for mandamus directing that the Chief provide immediate access to the arrest records. The Chief of Police took a motion to review, asserting that he had the absolute right to withhold the information and, as a matter of law, was not obligated to reveal the initial charge. The appeal was taken on an agreed statement of facts. In that stipulation Chief Breier acknowledged his possession of the records sought and that he was the custodian of them. He also acknowledged that the information sought was contained within "public records."

The only issue on appeal, according to the parties' statement of the case, is whether the Chief of Police is required under sec. 19.21, Stats., to make records available for routine inspection so the press and members of the public can ascertain the charge for which a person was arrested. We conclude that the answer to this question under the law must be "yes." We reverse the judgment of the trial court and remand with directions that mandamus be granted directing the Chief of Police to permit the petitioners and the public generally to routinely and contemporaneously inspect the records which show the charges upon which the arrests were initially made.

The factual posture of the case should be further clarified. In this action, the petitioners are seeking only to inspect arrest records as they are placed on the daily "blotter," a document which is used to record information about individuals when they are taken into police

custody. Although the record is referred to by the parties as the "blotter," the title which appears upon the form used is "Daily Arrest List."

Although we hold that the offense charged upon arrest must be revealed and the other information which the Chief has volunteered to reveal shall, as a matter of law, be open for inspection, we do not reach the question of whether the Chief is required to make available the name and address of complainants. Because the Chief's right to withhold the name of the complainant or informant is not raised in this case, the right of the Chief to block out or withhold that information is not decided. Nor do we decide whether the Chief of Police is required to make public the "rap sheet." The "rap sheet" must be distinguished from the "Daily Arrest List" or police "blotter." The police "blotter" is an approximately chronological listing of arrests, recorded at the time of booking at the police station. A "rap sheet" is a record which the police department keeps on each individual with an arrest record. "Rap sheets" are filed in alphabetical order and purport to show on a single document all arrests and police contacts of an individual. The public-policy reasons for the disclosure or nondisclosure of the "rap sheets" may differ markedly from the reasons which impel us to conclude that the arrest records showing the charges must be disclosed. Because no request has been made for access to these records, we do not in this case decide whether "rap sheets" must be available to the press and public.

The Chief takes the position that he need never disclose the initial charge. He states, however, that as a matter of policy the arrest charge will be available to the public only if the person arrested is formally charged by the prosecutor with an offense of the same or greater magnitude than that for which the original arrest was made. If no formal charges are brought or if a reduced

charge is finally brought by the prosecutor, the Chief asserts that he need never, and will never, reveal the charge on the original arrest.

The right of the public and the press to inspect the records showing the original charges upon arrest must be determined under the Wisconsin Public Records Statute, secs. 19.21(1) and (2), Stats., and the case law which has been evolved by this court interpreting and implementing that statute. The statute provides:

"Sec. 19.21 **Custody and delivery of official property and records.** (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary."

This statute, which provides for a general rule permitting examination or inspection of public records, was created by ch. 178, Laws of 1917. Prior to that time, a number of statutes authorized inspection in specific situations. Otherwise, the public's right to inspect public records was determined by the common law. *See, International Union, United Automobile, Aircraft & Agricultural Implement Workers of America v. Gooding,* 251

Wis. 362, 366, 29 N.W.2d 730 (1947), and *State ex rel. Youmans v. Owens*, 28 Wis.2d 672, 137 N.W.2d 470, 139 N.W.2d 241 (1965), particularly the per curiam opinion on rehearing at 685a.

On its face the statute states that, "[e]xcept as expressly provided otherwise," public records are subject to examination. Sec. 19.21(2), Stats. This court has, however, declined to read the statute literally. We have interpreted the statute as a statement of the common law, leaving in place the limitations on the inspection of records that existed at common law. We said in *Gooding, supra* at 372:

"While it is possible to contend that the words are so clear as not to be subject to construction we are of the view that the common-law right of the public to examine records and papers in the hands of an officer has not been extended."

Nevertheless, we have concluded, where common-law limitations on the right to examine records and papers have not been limited by express court decision or by statute, that presumptively public records and documents must be open for inspection. We stated in *Youmans*, relying on sec. 19.21(1) and (2), Stats.:

". . . that public policy favors the right of inspection of public records and documents, and it is only in the exceptional case that inspection should be denied." (at 683)

In *Beckon v. Emery*, 36 Wis.2d 510, 516, 153 N.W.2d 501 (1967), we stated that the "public policy, and hence the public interest, favors the right of inspection of documents and public records." *See, also State ex rel. Dalton v. Mundy*, 80 Wis.2d 190, 196, 257 N.W.2d 877 (1977). These cases restate the legislative presumption that,

where a public record is involved, the denial of inspection is contrary to the public policy and the public interest.

To implement this presumption, our opinions have set out procedures and legal standards for determining whether inspection of records is mandated by the statute. In the first instance, when a demand to inspect public records is made, the custodian of the records must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection. *Beckon v. Emery, supra* at 516; *Youmans, supra* at 682. If the custodian decides not to allow inspection, he must state specific public-policy reasons for the refusal. These reasons provide a basis for review in the event of court action. *Beckon, supra* at 518; *Youmans, supra* at 682. The custodian of the records must satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important public-policy considerations.

Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law. The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient. It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian. If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Beckon, supra* at 518, states, "[T]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary." (Emphasis supplied.)

Because the Chief of Police has stated his reason for denying inspection, it is the duty of this court, as it was for the trial court, to determine as a matter of law whether the custodian's stated reasons show that inspection would cause harm to the public interest which outweighs the presumptive public interest in allowing inspection.

In this case the Chief of Police refused to allow inspection of the records showing the initial arrest charge because, he said, he was "aware of possible economic and personal harm" to an arrested person "if the charge would become known to employers, credit agencies or even neighbors." The Chief is not contending that the fact of an arrest may be kept secret or that the names of persons arrested should not be revealed. Accordingly, the serious constitutional due-process question which would be posed by secret arrests does not arise in this case. Judge J. Skelly Wright, writing for the United States Court of Appeals for the District of Columbia has said:

"The requirement that arrest books be open to the public is to prevent any 'secret arrests,' a concept odious to a democratic society." *Morrow v. District of Columbia,* 417 F.2d 728, 741–42 (D.C. Cir. 1969).

Justice Corrigan of the Ohio Supreme Court, in a concurring opinion, stated:

"If there is no official arrest record at the jail, except the private log of the jailer, how is it to be determined if there was unnecessary delay in according the person arrested his rights? How is his family or a friend going to learn of his arrest if, on inquiry, they are advised there is no official record? The constitutional foundation underlying these rights is the respect a state or city must accord to the dignity and worth of its citizens. It is an integral part of constitutional due process that a public record of such arrests be maintained." *Dayton Newspapers, Inc. v. City of Dayton,* 45 Ohio St.2d 107, 112, 341 N.E.2d 576 (1976).

The Chief of Police is not asserting the right to make secret and undisclosed arrests. He seeks to keep secret the charge upon which the initial arrest was made unless formal charges of the same or greater magnitude are ultimately filed. Therefore, we are not confronted with a constitutional question, but rather with one involving public-policy considerations based upon the standards of sec. 19.21(1) and (2), Stats., and court interpretations based on that statute.

Reasons which are not asserted for refusing inspection are also significant. The Chief of Police does not assert that there is any law-enforcement interest in keeping secret the charge upon which the police made an arrest. No assertion is made that any liability will be incurred by the police department or by the city if the charge is revealed. The only reason asserted for nondisclosure is to prevent possible damage to the reputations of arrested persons.

At first blush, it would appear that this reason, based upon the intent to protect the reputations of arrested persons, does not involve a public-policy interest, for the interest sought to be protected is not that of the public but of individuals who have been arrested. Nevertheless, this court has concluded that the public-policy interest may be served in protecting the reputations of individuals.

In *Youmans, supra,* we emphasized that the right to inspect public records is not absolute. We pointed out, however:

"There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents." (at 681)

In *Youmans,* we examined the provisions of sec. 14.90 (3) (e), Stats. (1965), the public meeting law, to help determine what factors might properly be considered to jus-

tify the withholding of information in public records. The public meeting law, which has been redrafted and renumbered,[1] generally requires that meetings of governmental bodies be open to the public but specifies particular circumstances in which executive or closed sessions may be held. One of these exceptions to the general rule of openness is when financial, medical, social or personal histories and disciplinary data which may unduly damage reputations are to be considered.[2]

We concluded in *Youmans* that the legislative policy expressed in sec. 14.90(3)(e), Stats., "carries over to the field of inspection of public records and documents." (at 685)

Hence, we have concluded that there is a public-policy interest in protecting the reputations of citizens.

The law is now clear, however, that, where arrest records are made public, the arrested person has no remedy for an invasion of his reputational interests. In *Paul v. Davis*, 424 U.S. 693 (1976), the United States Supreme Court held that a cause of action under 42 U.S.C. sec. 1983 would not lie against police officials who publicized the fact of an arrest on a shoplifting charge at a time when the defendant's guilt or innocence had not been resolved because the charge had been "filed away with leave [to reinstate]." The charge was later dismissed.

---

[1] Sec. 19.83, Stats., is the current provision setting out the general rule that meetings of governmental bodies must be open. The exceptions to the rule are listed in sec. 19.85, Stats.

[2] Sec. 14.90(3)(e), Stats. (1965), provided:

"(3) Nothing herein contained shall prevent executive or closed sessions for purposes of:

". . . .

"(e) Financial, medical, social or personal histories and disciplinary data which may unduly damage reputations."

A substantially similar exception is now provided in sec. 19.85 (1)(f), Stats.

The United States Supreme Court specifically held that there is no constitutional protection against the state's disclosure of arrest on a particular charge. The limited nature of the holding in *Davis* should, however, be recognized, for a sec. 1983 action is appropriate only where there is a denial of a federal constitutional right under the color of state law. *Davis* clearly stated that there is no constitutional right to the privacy of arrest records. The court said its previous recognition of certain constitutionally protected "zones of privacy" in marriage, procreation, and family matters did not constitute authority for a constitutional privacy right preventing the state from publicizing a record of the official act of an arrest.

Nor does it appear that any right of privacy is afforded by state law. Under the recently enacted right of privacy law, sec. 895.50, Stats., ch. 176, Laws of 1977, "One whose privacy is unreasonably invaded is entitled to . . . relief." Publicity given to a matter of private life may constitute an invasion of the right of privacy. However, the right to relief depends on whether there is "a legitimate public interest in the matter involved." Sec. 895.50 (2) (c). The statute is to be construed "in accordance with the developing common law of privacy." Sec. 895.50 (3). The basic common law approach is that, where a matter of legitimate public interest is concerned, no cause of action for invasion of privacy will lie. *Williams v. KCMO Broadcasting Division—Meredith Corp.*, 472 S.W. 2d 1, 4 (Mo. Ct. of App. 1971). That case is relevant to the matter before us, because it held that an arrest is a matter of legitimate public interest and, therefore, that a news report concerning an arrest could not be the basis for a cause of action for invasion of privacy. Moreover, the Wisconsin right of privacy statute, sec. 895.50 (2) (c), specifically states, "It is not an invasion of privacy to communicate any information available to the public

as a matter of public record." Accordingly, the legislature has determined that individuals have no right of privacy in materials contained in public records that are open to the public generally.

Chief Breier concedes that the arrest information sought is contained in "public records." Our holding that arrest information is available to the press and public generally precludes any cause of action for invasion of privacy. The mere fact, however, that a person whose reputation is injured by the release of an arrest record has no remedy does not ipso facto demonstrate that it is in the public interest to release such records.

The extent of harm to individual reputations by release of certain records should be considered. The police "blotter" or arrest list, inspection of which is sought in this case, is an approximately chronological, daily listing of arrests made. If one were to use the police "blotter" to seek information on arrests of a particular individual, it would be necessary to know the approximate date on which the arrest occurred. While the arrest list is useful to the news media in determining on a daily basis whether any arrests of legitimate public interest have occurred on a particular day, the arrest list is of little use to employers or credit agencies who seek to check the arrest records. *See, Morrow v. District of Columbia, supra* at 741.

An entirely different issue would be presented to this court if a right of access were claimed to the "rap sheets," the alphabetical records, by the name of the arrested person, which show all arrests of and police contacts with individuals, regardless of whether an arrest or conviction resulted.

Although the Chief contends that an arrested person's reputation is protected when the charge for which the arrest was made is kept secret, it is not apparent that this is so. The Chief is willing to make the fact of the

arrest and the identity of the arrested person available to the public. An arrested person is not necessarily more protected from damage to reputation when the police disclose the fact of his arrest but not the charge. The half-truth can in many cases be more damaging to the individual than the full truth. The disclosure of the fact of the arrest without stating the reason for it might well lead to assumptions more damaging than the actual facts.

■

It is apparent, then, that the release of these records would not constitute an invasion of either a constitutionally or statutorily protected right of privacy. It is doubtful, moreover, that any suppression of these records short of total secrecy—and the right to do that is not claimed—would protect the reputations of arrested persons.

■

Nevertheless, the Chief of Police has asserted a legitimate concern for the rights of individuals in their reputations which must be recognized by this court. This legitimate concern for the reputations of citizens is a matter of public interest and must be weighed against the interest of the public in having the records open. This court has consistently held that, in the process of balancing policy considerations favoring secrecy for whatever reason against those favoring the public's right of inspection, the public interest in open public records weighs heavily in every case. *State ex rel. Dalton v. Mundy, supra* at 196.

■

The presumption of the public records statute is that there is a right to inspect a public document. Only if there are sufficient public-policy reasons to the contrary can that presumption be overcome. The public records statute reflects a basic tenet of the democratic

system—that the electorate must be informed of the workings of government. It is a principle which underlies the first amendment guarantees of freedom of speech and of the press. Thomas Jefferson wrote:

"If a nation expects to be ignorant and free in a state of civilization, it expects what never was and never will be. The functionaries of every government have propensities to command at will the liberty and property of their constituents. There is no safe deposit for these but with the people themselves, nor can they be safe with them without information. Where the press is free and every man able to read, all is safe." *The Political Writings of Thomas Jefferson* 93, Edited by E. Dumbauld (1955).

The United States Supreme Court has pointed out that the first amendment assures the interchange of ideas and promotes free political discussion to serve the end of a government responsive to the people. *Branzburg v. Hayes,* 408 U.S. 665 (1972).

We need not in the instant case resort to any asserted constitutional requirement of open public records, because the common law and the language employed by the legislature in the public records law are sufficient for the decision of this case. It is apparent, however, that the common law of Wisconsin and the statutes enacted by the legislature are consistent with views that the Constitution of the United States, particularly the first amendment, may require open records in respect to most public business. *See, e.g.,* Ivester, "The Constitutional Right to Know," 4 Hastings Const. L.Q. 109 (1977); Comment, "The Rights of the Public and the Press to Gather Information," 87 Harv. L. Rev. 1505 (1974); Comment, "The First Amendment and the Public Right to Information," 35 U. Pitt. L. Rev. 93 (1973).

Although we do not reach the constitutional issue because sec. 19.21, Stats., permits inspection in this case, there are persuasive judicial decisions that state that the

right of access to certain public records is implicit in the first amendment. We rely upon these cases not for their constitutional holdings, because the constitutional issue is not before us, but because they underscore the strength of the public policy favoring the inspection of public records.

The Texas Court of Civil Appeals in *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (1975), held that there was a statutory right of access to the police "blotter" under the state's open records law and a constitutional right of access to reports which stated the offense committed and other information on crimes. It drew the line, however, and refused access to records which dealt with the investigation of crime and to "rap sheets," which listed the arrest history of individuals. "Rap sheets" were not to be open for inspection, because the potential damage to the individual outweighed the public interest in access to public records. The Texas court, however, held unequivocally that the right to inspect a document containing information about the initial charge, a chronological police "blotter," was a right that was protected both statutorily and constitutionally.

*Herald Co. v. McNeal,* 553 F.2d 1125 (8th Cir. 1977), held that there was a colorable constitutional claim to support an action which sought access to police-arrest registers.

The United States Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665 (1972), suggested in dicta that the news media are entitled to some constitutional protection from official harassment that would tend to invade the first-amendment rights to gather and publish news. It did not, however, decide or discuss the question of whether there is a first-amendment right of access to public records.

It is apparent from Wisconsin statutes and cases that there is a strong public-policy interest favoring the in-

spection of public records. This public interest is particularly significant where arrest records are concerned.

An arrest represents the exercise of the power of the state to deprive a person of his liberty. Under the fourth and fourteenth amendments an arrest may be made only upon probable cause. *Giordenello v. United States,* 357 U.S. 480, 485 (1958); *State v. Paszek,* 50 Wis.2d 619, 624, 184 N.W.2d 836 (1971).

An arrest is a completed official act. It must be preceded by the exercise of discretion in light of the facts as reasonably viewed by an arresting officer or by a magistrate who authorizes an arrest warrant. It is an initial step in the judicial process, which may be reviewed. In particular, an arrest is appropriately tested by the great writ, the writ of habeas corpus. We cannot view the arrest, as apparently the Chief of Police does, as merely a tentative and incomplete jural act. Whether an arrest is subsequently ratified by the issuance of a charge of the same or greater magnitude at a later time, it is, nevertheless, at the time it is made, a completed official act of the executive branch of government.

The power to arrest is one of the most awesome weapons in the arsenal of the state. It is an awesome weapon for the protection of the people, but it is also a power that may be abused. In every case, the fact of an arrest and the charge upon which the arrest is made is a matter of legitimate public interest. The power of arrest may be abused by taking persons into custody on trivial charges when charges of greater magnitude would be appropriate. The power of arrest may be abused by overcharging for the purpose of harassing individuals and with the expectation and intent that the initial charge will be dismissed or substantially reduced.

In any event, curbing abuse of the arrest power is only possible if the public can learn how that power is exercised. The mere revelation that a person has been arrested does not make possible the public scrutiny of lawfulness or appropriateness of police conduct, nor, as we have pointed out, does it protect to any significant degree the reputational interest of the person arrested.

Moreover, the initial arrest charge is important, not only to give public oversight to the police function, but also to make possible public oversight of the charging discretion of the prosecutor. We cannot assume, and do not assume, that initial arrest charges do not reflect the appropriate charge which ultimately should be brought against the individual. However, when a prosecutor subsequently determines that he will reduce a charge brought by the police, the prosecutor's discretion can better be reviewed in light of the initial charge made by the police at the time of the arrest.

It would appear to be a travesty of our judicial and law enforcement system to acknowledge that the fact of arrest may not be secret but to permit persons to be arrested or to be held in custody without the public having the right to know why the individual is in custody or upon what or for what offense he is charged. The continuation of this procedure could lead to such abuses as preventive detention and custody for secret reasons.

Under the rationale of *Beckon* and *Youmans, supra,* we are obliged to balance the public interest in protecting the reputations of individuals by suppressing the information concerning initial charges against the competing public interest in access to the charges upon which arrests are made.

As pointed out above, there is nothing to show that the disclosure of the fact of arrest without the reason for the arrest is at all protective of reputation. The

failure to reveal the cause of the initial arrest may well be more harmful than the full disclosure. Although it must be conceded that the public interest in the protection of the reputations of individuals is not an insubstantial concern, that interest must be measured against the strong public interest which favors the right of inspection of public records.

Information concerning the operations of the police department in making arrests and the charges upon which arrests are made is vital to the democratic system; and presumptively, by statute, the records are to be open. While in some cases involving police functions there is an overriding public interest in preserving secrecy (*e.g.*, in the investigation of pending or proposed criminal charges), no overriding public-interest concern is discernible when the executive act of arrest has been completed. An arrest is the exercise of the government's power to deprive an individual of freedom. The government is required to have probable cause whenever it deprives an individual of personal liberty, and it is offensive to any system of ordered liberty to permit the government to keep secret its reason for depriving an individual of liberty.

From at least the time of the Magna Carta and the formalization of the writ of habeas corpus, the concealment of the reason for arrest has been as odious as the concealment of the arrest itself. It is fundamental to a free society that the fact of arrest and the reason for arrest be available to the public.

The trial court attempted to compel the Chief of Police to make the arrest record available on a case-by-case discretionary basis. The Chief of Police, on his motion to review, has pointed out the serious defects in the trial court's judgment. Basically, the trial court would compel the Chief of Police to justify withholding of information on an individual basis, with the additional

requirement that the failure to provide satisfactory reasons for refusing inspection within forty-eight hours would permit the release of the information. This approach has a number of obvious flaws. As the Chief of Police has pointed out, it is not practical for the Chief of Police or any administrator to weigh the competing factors individually for each arrest in a city the size of Milwaukee. Additionally, the trial court seems to be suggesting that it would be appropriate to make distinctions and to decide to release or not release the arrest charge information on the basis of the backgrounds of individuals and the value of their reputations. We have been given no justifiable rationale for this distinction. If the cause of arrest is to be available to the public in one case, it must be available in all cases.

Finally, this case-by-case determination would not only place a tremendous burden upon police administrators but would be likely to result in feckless, repetitive, and burdensome litigation in the courts.

And although we have no reason to believe that the present administration of the police department of the City of Milwaukee would use the discretion afforded by the trial court's judgment for oppression and abuse, this discretionary system provides a built-in potential for abuse which would tempt police officials to keep secret a charge in the very case when it is most important that the charge be disclosed.

We are satisfied that the trial court's commendable attempt to compromise these competing interests is likely to be more productive of harm to all interests than it is likely to reconcile them in the public interest.

Because of the statutory and common-law presumption that public records should be available to the public and because of the strong public-policy interests in making the arrest records public, those interests clearly outweigh

the amorphous, ill-defined interests that the public might have in the protection of the reputations of persons who have been arrested. As stated above, the balance of policy considerations in respect to the particular records does not vary from case to case.

We hold as a matter of law that the harm to the public interest in the form of possible damage to arrested persons' reputations does not outweigh the public interest in allowing inspection of the police records which show the charges upon which arrests were made. The police "blotter" shall be open for inspection by the public at any time when the custodian's office is open for business and the "arrest list" or the police "blotter" is not actually being used for the making of entries therein.

It is also argued that mandamus is not the proper remedy in this case. We conclude, however, that the public-policy interest in every case is the same and that a uniform right of inspection of daily arrest records is appropriate. The defendants argue that mandamus is not the correct remedy in the instant case, because, they apparently assert, that remedy is only appropriate where the production of a particular document is sought. This is, of course, contrary to the precedents established by this court. In *Beckon v. Emery, supra,* we held that an appropriate remedy was mandamus when what was sought was a production of all records of a particular kind for the preceding year. We hold that the information sought by the petitioners in this action, *i.e.,* the charges upon which arrests have been made, must, as a matter of law, be available for inspection. We stated in *Beckon v. Emery,* ". . . we have traditionally tested the right to inspection by the use of mandamus." 36 Wis.2d at 518.

Accordingly, we direct that a writ of mandamus be issued by the trial court.

*By the Court.*—Judgment reversed, and cause remanded with directions to issue a writ of mandamus to compel defendants, Harold A. Breier, Chief of Police, and the City of Milwaukee, to make available for inspection the daily record of arrests which shows the charges upon which the arrests were made.

COFFEY, J. *(dissenting).* A police officer's grounds for arrest, consisting of his conclusions as to probable cause, are not always confirmed by the formal charges filed. An arrest for contributing to the delinquency of a minor resulted in a murder charge in *State v. Babich,* 258 Wis. 290, 45 N.W.2d 660 (1950). More recently, a probation violation hold was the ground for detention until a murder charge was lodged in *Wagner v. State,* 89 Wis.2d 70, 277 N.W.2d 849 (1979). A felony ground for arrest often results in a prosecution for a misdemeanor. In the latter case, does the individual arrested have a protectable interest in his reputation? Chief Breier thinks he does, and I agree. In the City of Milwaukee, as the majority recognizes, there are a number of arrests made for which no formal charges ever issue.

I have no wish to inhibit the press in the discharge of its duty to provide information to the public. However, the tension which exists between the public's right to know and the individual's interest in reputation requires a balancing of the competing interests. The Chief struck the balance in this case by denying access to the daily arrest lists until such time as formal charges were issued. I think his judgment is proper. What public policy supports trampling on an individual's right of privacy and making public a family argument wherein an arrest has been made solely for the protection of the parties? Why invade an individual's privacy by disclosing an arrest which terminates, not in criminal charges, but in a *private* civil mental commitment proceeding for the

protection of the patient. Why must we force a husband or wife, mother or father, sister or brother to relive the incident with each and every explanation that must be made to those informed by a newspaper account? Must the patient carry this stigma of temporary mental illness throughout life?

The majority holds that our new right of privacy statute, Wis. Stats., sec. 895.50, furnishes no protection to a person arrested, even though the grounds for arrest are never proven because no prosecution on those grounds is attempted. This holding protects the police department and the newspaper from an invasion of privacy suit. But the damage to the person arrested through disclosure and publication is irreparable. If any balancing were to be done between the reputational interest of the individual and the newspaper's right to have this piece of gossip gift wrapped for publication, there is no doubt that the scales of justice would weigh heavily on the side of the individual.

The legislature has given us a mandate to develop a common law of privacy. Wis. Stats., sec. 895.50 (3). The majority refuses to do so by making an overbroad interpretation of the "matter of public record" exception in sec. 895.50 (2) (c). Before this case, there was a clear distinction between public records and matters contained in public documents. In *State ex rel. Youmans v. Owens,* 28 Wis.2d 672, 137 N.W.2d 470, 139 N.W.2d 241 (1965) the court said:

"There are many statutes that impose upon particular public officers the duty to keep certain records which evidence an express or implied legislative intent that such records be open to public inspection. With respect to public records of this category . . . the officer custodian thereof would have no right to refuse public inspection." *Id.* at 685a.

Thus, matters of public record are those where the legislature has imposed a duty to compile the record. In

all other cases, the common law requirement of a balancing of interests as a condition precedent to disclosure of the matters in public documents is continued.

The distinction between public records and matters contained in public documents, heretofore so clearly made, is now obliterated on the reasoning that anything contained in a public document is a matter of public record. This is an expansion of the legislative intent underlying the public documents statute determined in our prior decisions. Wis. Stats., sec. 19.21 (1) recites:

"19.21 **Custody and delivery of official property and records.** (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

The statute as written and as previously interpreted by this court, does not contemplate the majority's holding that any public document kept as a means of more efficiently discharging the duties of office is a public record subject to public release. It is presumptuous for this court, which does not and cannot have the benefit of public hearings and constituent expression of opinion, to decide this matter of vital importance. It is and should be up to the legislature to say when an office record is a public document.

I would reverse the judgment appealed from and remand the same with directions to dismiss the action.