BARBARA NICHOLS, Secretary Department of Regulation and Licensing
You have asked for my opinion regarding access under the open records law to certain investigative files in your custody.
Your Department and the various licensing and regulatory boards created in your Department are responsible for the regulation and licensing of a variety of professions. You are presently concerned with the boards that oversee health care providers, namely the Dentistry Examining Board, Medical Examining Board, Board of Nursing and Pharmacy Examining Board. You state that a major newspaper has requested a current list and monthly update of all pending investigations before those boards.
Pursuant to section 440.20, "[a]ny person may file a complaint before any examining board and request any examining board to commence disciplinary proceedings against any permittee, registrant or license or certificate holder."
Section RL 2.03(7) of the Wisconsin Administrative Code defines "informal complaint" as follows:
 "Informal complaint" means any written information submitted to the division [of enforcement] or any board by any person which requests that a disciplinary proceeding be commenced against a licensee or which alleges facts, which if true, warrant discipline. "Informal complaint" includes requests for disciplinary proceedings as specified in s. 440.20, Stats.
You state that most informal complaints come from sources "lacking sufficient expertise to evaluate the appropriateness of the professional practice alleged or the legality of the conduct." All informal complaints are subject to an initial screening pursuant to section RL 2.035 of the Wisconsin Administrative Code, which reads as follows:
 All informal complaints received shall be referred to the division for filing, screening and, if necessary, investigation. Screening shall be done by the board, or, if the board directs, by a board member or the division. In this section, screening is a preliminary *Page 39 
review of complaints to determine whether an investigation is necessary. Considerations in screening include, but are not limited to:
 (1) Whether the person complained against is licensed;
(2) Whether the violation is a fee dispute;
 (3) Whether the matter alleged, if taken as a whole, is trivial; and
 (4) Whether the matter alleged is a violation of any statute, rule or standard of practice.
You state that as a practical matter this provision is used only as a broad jurisdictional screen and matters are routinely placed "under investigation" without any preliminary evaluation of the merits. Therefore, a very high percentage of informal complaints are identified in department records as being "under investigation."
The Division of Enforcement conducts investigations of all persons and entities identified as "under investigation." If the investigation discloses a violation of law a formal complaint may be drafted and a disciplinary proceeding commenced by the filing of a Notice of Hearing with the respective board office and the designated hearing examiner. The threshold burden for issuance of a formal complaint varies from board to board. The Medical Examining Board must make a finding of probable cause after the investigation is substantially completed and before a formal complaint can issue and a disciplinary proceeding can be commenced. Other boards do not have this specific probable cause requirement for issuance of a formal complaint. Instead, the decision to issue a formal complaint is controlled by the professional and ethical constraints of the prosecuting attorney and the respective board. Formal complaints are not issued until the investigation has been substantially completed and a violation of law identified. If after a hearing on the allegations of the formal complaint the board determines that a violation of law has occurred, it may reprimand, suspend, revoke or limit the license of the licensee.
The investigations conducted by the Division of Enforcement result in a substantial number of the informal complaints "under investigation" being closed without commencement of any formal *Page 40 
disciplinary proceeding. The majority of these cases are closed because the investigation did not result in the collection of evidence sufficient to form a basis for prosecution. More specifically, 98% of the Dentistry Board, 82% of the Medical Board, 92% of the Pharmacy Board and 59% of the Board of Nursing investigations completed between January 1, 1983, and July 31, 1983, were closed without commencement of formal disciplinary proceedings.
You also state that matters "under investigation" are treated differently so that the apparently less serious allegations or weaker cases may remain "under investigation" for longer periods of time, thus possibly creating a false impression as to the severity or extent of an alleged violation if the information were publicized.
You state the following with respect to the rights and interests of persons under investigation:
 The licensee has no meaningful legal recourse to challenge his status as "under investigation" during the pendency of the investigation. The Department's action at this phase of the administrative process is probably not reviewable in any legal forum.
 Physicians, dentists, pharmacists and nurses have significant reputational interests to protect. Their professional and economic success and well being are directly related to the image they maintain in both the public and private sectors. A professional will not make a referral to another professional who he or she suspects may be incompetent. Similarly, a member of the public will not seek health care from an individual who he or she perceives as possessing questionable skill and knowledge.
You ask:
 1. Under the facts and circumstances herein stated, does public records law prohibit the Department from disclosing a record identifying a licensee under investigation prior to the issuance of a formal complaint and Notice of Hearing on the ground that the disclosure would be likely to have a substantial adverse effect upon the reputation of the licensee which would outweigh the public interest in disclosure?
 2. Under the facts and circumstances herein stated, does public records law permit the Department to not disclose a record *Page 41 
identifying a licensee under investigation prior to the issuance of a formal complaint and Notice of Hearing on the ground that the disclosure would be likely to have a substantial adverse effect upon the reputation of the licensee which would outweigh the public interest in disclosure?
 3. What liability, if any, does the records custodian incur if he or she makes a good faith but incorrect decision to disclose a record in response to a public records request? To what extent, if any, do Wis. Stats. secs. 895.50(2)(c) and 895.50(3) provide immunity from liability for a records custodian who makes a good faith but incorrect decision to disclose a record in response to a public records request?
 4. What obligation, if any, does the Department have under the public records law to honor prospective requests for monthly updates of records not in the possession of the agency at the time the request is made?
As to questions 1 and 2, it is my opinion that the public records law does not prohibit disclosure but does permit nondisclosure under the facts and circumstances described.
In order to find a prohibition against disclosure there must be a specific statutory provision which establishes the prohibition. Sec. 19.36(1), Stats. I am aware of none pertaining to the records in question.
However, section 19.35(1) provides:
 The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.
Section 19.85(1)(b) and (f) authorize closed meetings for the following purposes:
 (b) Considering dismissal, demotion, licensing or discipline of any public employe or person licensed by a board or commission or the investigation of charges against such person, or considering the *Page 42 
grant or denial of tenure for a university faculty member, and the taking of formal action on any such matter; provided that the faculty member or other public employe or person licensed is given actual notice of any evidentiary hearing which may be held prior to final action being taken and of any meeting at which final action may be taken. The notice shall contain a statement that the person has the right to demand that the evidentiary hearing or meeting be held in open session. This paragraph and par. (f) do not apply to any such evidentiary hearing or meeting where the employe or person licensed requests that an open session be held.
. . . .
 (f) Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.
It is my opinion that the tentativeness of matters "under investigation" in your Department would justify nondisclosure until it is decided whether to commence disciplinary proceedings. In particular, I am struck by the fact that matters are placed "under investigation" with minimal if any preliminary evaluation of the merits and a very small percentage of the informal complaints ultimately result in formal proceedings. I am also persuaded that the reputational interests at stake are predictably substantial and that improvident public disclosure that investigations are pending would have an undue adverse effect on professional reputations in the vast majority of cases where formal disciplinary proceedings are ultimately deemed unwarranted.
I agree with your opinion that these circumstances are different from those involved in Newspapers, Inc. v. Breier,89 Wis.2d 417, 279 N.W.2d 179 (1979). The supreme court held that the daily arrest list, or "blotter," kept by a police department is open to inspection. The court said:
 Information concerning the operations of the police department in making arrests and the charges upon which arrests are made is vital to the democratic system; and presumptively, by *Page 43 
statute, the records are to be open. While in some cases involving police functions there is an overriding public interest in preserving secrecy (e.g., in the investigation of pending or proposed criminal charges), no overriding public-interest concern is discernible when the executive act of arrest has been completed. An arrest is the exercise of the government's power to deprive an individual of freedom. The government is required to have probable cause whenever it deprives an individual of personal liberty, and it is offensive to any system of ordered liberty to permit the government to keep secret its reason for depriving an individual of liberty.
Breier, 89 Wis.2d at 438.
Although dicta, the court distinguishes between pending investigations and cases where probable cause has been found and an arrest made based thereon. In the former situation the court anticipates that while an investigation is in flux private reputational interests as well as law enforcement interests will outweigh the general public interest in access to public records.
Also, the court in Breier expressly declined to decide whether there is public access to "rap sheets" which contain arrest records of individuals. But the court did say that the public policy reasons for the disclosure or nondisclosure of "rap sheet" records may differ markedly from the reasons which led the court to rule the police blotter accessible. Breier, 89 Wis.2d at 424.
These statements by the court reveal a sensitivity to reputational interests of persons under investigation and indicate it may very well be proper to keep investigative files confidential until the investigation is substantially completed. This sensitivity is also reflected in SCR 22.24
relating to investigations of attorneys and section 757.93
relating to investigations of judges.
The court's statements in Breier do not expressly sanction the nondisclosure of investigative files, but they serve to suggest that such a position is not patently indefensible and may be entirely appropriate. This indicates to you that it would not be unreasonable to decide to keep your pending investigation files confidential.
Attendant to a decision to keep pending investigation files confidential is an obligation to ensure that investigations are conducted *Page 44 
expeditiously and that the decision to close the investigation or pursue disciplinary action is made without unnecessary delay. It would not be justified to broadly characterize inactive files as pending investigations so as to foreclose public access.
I also want to make very clear that this opinion relates only to pending investigation files. Once an investigation is completed and the decision whether to pursue disciplinary action is made, there may no longer be sufficient reasons for keeping the file confidential. Specifically, the concern for a premature and probable adverse effect on the reputation of a licensee being "under investigation" is allayed when the file also discloses that the investigation found no basis for pursuing disciplinary action. It may still be justified in some cases to decline to disclose some or all of an investigative file even after the investigation is resolved. However, these determinations should be rare and must be made on a case-by-case basis.
As to your third question, it is my opinion that if a custodian makes a good faith decision to disclose a public record, the custodian would be generally immune from liability by virtue of the principle of public officer immunity as described in Listerv. Board of Regents, 72 Wis.2d 282, 300, 240 N.W.2d 610 (1976), and specifically immune from liability for invasion of privacy by virtue of section 895.50(2)(c). If information relating to a matter "under investigation" is disclosed, you should nevertheless stress that it is inappropriate to draw any adverse conclusions from the mere pendency of the investigation.
As to your fourth question regarding prospective continuing requests for monthly updates, it is my opinion that the open records law does not contemplate that such a request be honored. The right of access applies only to extant records, and the law contemplates custodial decisions being made with respect to a specific request at the time the request is made. Secs. 19.32(2) and 19.35(1)(a), (h) and (4), Stats.
BCL:RWL *Page 45