Michael J. WATTON,
d/b/a Watton Law Group,
Petitioner-Appellant,

v.

Nanette H. HEGERTY, Chief of Police,
and as official custodian of records for the
City of Milwaukee Police Department,
Respondent-Respondent.†

Court of Appeals

*No. 2006AP3092. Submitted on briefs August 7, 2007.
—Decided November 6, 2007.*

2007 WI App 267

(Also reported in 744 N.W.2d 619.)

† Petition to review granted 1/22/08.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael J. Watton* of *Watton Law Group* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney and *Melanie R. Swank*, assistant city attorney of Milwaukee.

Before Wedemeyer, Fine and Kessler, JJ.

¶ 1. KESSLER, J. Michael J. Watton appeals from an order denying a writ of mandamus which sought to compel Milwaukee Police Chief Nannette H. Hegerty to produce certain emergency detention reports prepared by Milwaukee police officers pursuant to Wis. Stat. §§ 51.15(1) and (4) (2005–06),[1] and retained by the Milwaukee Police Department (MPD). The detention reports concerned conduct by Sidney Kente Gray. Watton requested the records from the MPD under Wis.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

STAT. § 19.35, the open records statute.[2] The trial court concluded that the MPD-retained emergency detention reports were confidential under WIS. STAT. § 51.30(4) as "treatment records," were therefore exempt from disclosure under the open records statute, and dismissed the petition. Because we conclude that the trial court did not correctly construe the relevant statutes, we reverse.

## BACKGROUND

¶ 2. Watton is an attorney who represents the estate and family of Frank Moore II, a person shot and killed by Gray. Watton asserts, and the City does not dispute in these proceedings, that the killing occurred the following day, after Gray was alleged to be mistakenly released from custody. Watton asserts that the release was the result of negligence by the MPD.

¶ 3. Pursuant to WIS. STAT. § 19.35, Watton filed a public records request with the MPD that, as material to this appeal, requested the following:

All police records which include a signed statement of emergency detention of Mr. Gray, including, but not limited to the following specific detentions:

a. June 13 or 14, 2006 (the signed statement of emergency detention pursuant to WIS. STAT. 51.15(4)(a) with all allegations and observations).

b. A January, 2006 signed statement of emergency detention, as described above.

¶ 4. The request identified Gray by various aliases and addresses. It is not disputed that Gray is the

---

[2] The arguments before this court involve only three MPD emergency detention reports regarding Gray. The full request was for more than the emergency detention reports, but the other documents were provided by the time of the trial court hearing.

person about whom the records were sought and to whom the records disputed here pertain. Watton was promptly presented with a one-page form denial, which made no reference to Watton's specific request, and which read in its entirety:

MILWAUKEE POLICE DEPARTMENT REASONS FOR DELETION

#19 The information that has been deleted relates to a medical or physical condition which, if revealed, may constitute an invasion of the right of privacy of the individual involved and/or immediate survivors. WIS. STAT. §§ 51.30(4), 51.34, 895.50.

(Format, underlining and capitalization as in original.)

¶ 5. On September 19, 2006, Watton filed a petition for a writ of mandamus to compel Hegerty to provide the requested documents. In support of his petition, Watton attached various documents he apparently obtained from public sources. The record reflects Watton's requests that Gray's defense attorney authorize Gray to consent to release of these documents, and that this request was ignored. A six-page evaluation of Gray's competency, prepared by Deborah L. Collins, ABPP, Psy.D., Assistant Director of the Wisconsin Forensic Unit, is included in Watton's petition. The evaluation was done for use in Gray's criminal proceeding.[3] The evaluation discloses Gray's status as a mental health patient at the Milwaukee County Mental Health Complex on nine occasions between March 2005 and June 2006. Wisconsin Circuit Court Access (CCAP) records indicate the evaluation was done at the request

---

[3] Consolidated case Nos. 06CF3897 and 06CF3898 charge Gray with attempted burglary, resisting an officer, operating a vehicle without owner's consent, and first-degree intentional homicide while armed.

of Gray's attorney. The evaluation report[4] is a public record, filed with the court presiding over the criminal proceedings. On October 20, 2006, CCAP records indicate Gray entered a plea of not guilty by reason of mental disease or defect to the criminal charges.

¶ 6. Although the trial court did not grant the writ and order a response, the court did set the matter for a hearing on November 20, 2006. The City produced the requested records (excluding the retained emergency detention reports) along with its formal written response, on October 19, 2006, forty-one days after the date of the original request. WISCONSIN STAT. § 19.35(4)(a) of the open records statute requires production of the records "as soon as practicable and without delay." The trial court found that because the request identified multiple aliases, two birthdates, and several addresses for Gray, the time taken for response was not unreasonable.

¶ 7. At the hearing, the City responded to the petition by admitting that the MPD had copies of three emergency detention reports which involved Gray within the requested time period. The City asserted that it was not required by WIS. STAT. § 19.35 to produce those documents because they were prepared pursuant to WIS. STAT. § 51.15(4)(a), and therefore were confidential under § 51.30(4) as "treatment records." The City

---

[4] Although concluding that Gray was able to generally understand the proceedings and assist in his own defense, this report disclosed

> an estimated nine episodes of care with the MHC [Mental Health Complex] between March of 2005 and June of [2006]. Three of those contacts involve inpatient psychiatric hospitalizations, the most recent of which occurred between 06/13 and 06/20/06. In connection with that hospitalization, the defendant received diagnoses of Schizophrenia, Undifferentiated Type, and Cannabis Abuse.

also asserted that the records were protected from disclosure by Gray's right of privacy as described in WIS. STAT. § 995.50.[5] Finally, the City argued that Watton was not entitled to mandamus to compel production of the MPD documents because he had an alternative adequate remedy at law, *i.e.,* § 51.30(3)(c) or (4)(b)(4) allowed him to ask another court to order the treatment facility to release its records.

¶ 8. The parties agreed that the records in dispute were created pursuant to WIS. STAT. § 51.15(4), and that a copy of each document was kept by the MPD. Watton made it clear that he was requesting the document retained by the MPD, not the one delivered to the treatment facility. All parties and the trial court assumed that the two documents are identical on their face.

¶ 9. The trial court read various statutes into the record. These included: WIS. STAT. § 51.15(4), which describes the substance required in, and procedural posture of, the emergency detention report; WIS. STAT. § 51.30(1)(am), which defines "registration records"; § 51.30(1)(b), which defines "treatment records"; and § 51.30(4), which addresses access to those and other records. The trial court made the following finding as to the character of the document retained by the MPD:

> I understand that the department gave the original statement of detention to the detention facility entity when the subject was delivered there, and a copy was retained by the department. I'm not exactly sure of the purpose of the department in retaining a copy. I believe I was told at the hearing that a copy was kept to make

---

[5] The briefs refer to WIS. STAT. § 895.50. The statute has been renumbered and is now WIS. STAT. § 995.50 (eff. Apr. 5, 2006).

sure that the department wasn't charged for an ambulance or something like that . . . .

¶ 10. The trial court concluded that "it would be an absurd result if [Watton] could obtain a copy of statements of detention because the department kept a copy . . . . I don't think the statutes provide for that occurring."

¶ 11. In discussing the relationship between the open records statute, Wis. Stat. § 19.35(1), and Wis. Stat. § 51.30(4), the trial court concluded:

> Statute 19.35(1) Right to Inspection. And (a) provides except as otherwise provided by law, any requester has a right to inspect any record. There is a statute that does not allow these records to be disclosed. That's Section 51.30(4). The petitioner does not have a clear right to the requested records, and there is no positive plain duty for the police department to provide those records to him.

¶ 12. The trial court dismissed the petition for the writ on the merits. This appeal followed.

## STANDARD OF REVIEW

¶ 13. We review questions of statutory interpretation *de novo*. *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 14. Where a circuit court determines a petition for writ of mandamus by interpreting Wisconsin's Open Records Law and has applied that law to undisputed facts, we review the court's decision *de novo. ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 15, 259 Wis. 2d 276, 655 N.W.2d 510; *State ex rel. Blum v. Board of Educ.*, 209 Wis. 2d 377, 381, 565 N.W.2d 140 (Ct. App. 1997); *Wisconsin State Journal v. University of Wis.-Platteville*, 160 Wis. 2d 31, 36, 465 N.W.2d 266 (Ct. App. 1990).

## DISCUSSION

*I. Relevant, statutes*

**A. Open records statute—WIS. STAT. §§ 19.35–19.39**

■

¶ 15. Wisconsin's open records statute[6] requires disclosure of documents maintained by government entities unless disclosure is otherwise prohibited by

---

[6] WISCONSIN STAT. § 19.35, entitled "Access to records; fees," states:

> **(1)** RIGHT TO INSPECTION. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

WISCONSIN STAT. § 19.36, entitled "Limitations upon access and withholding," states:

statute or common law or there is a strong public policy against disclosure. *See Woznicki v. Erickson*, 202 Wis. 2d 178, 181, 549 N.W.2d 699 (1996). When provisions of the Wisconsin privacy statute, WIS. STAT. § 995.50, are also implicated, our supreme court has explained that a balancing test must be applied to the facts in light of the competing policies, and blanket exceptions may not be applied unless provided by common law or statute. *Woznicki*, 202 Wis. 2d at 183. Disclosure of public records also may be limited by specific state or federal statute.[7] The parties rely on no federal statute to justify withholding the emergency detention reports. The parties have cited no common law basis justifying the refusal to produce these detention reports. We turn, therefore, to Wisconsin statutes to determine whether those sources prohibit disclosure of the emergency detention reports in the possession of the MPD.

## B. Mental health treatment statutes

### 1. WISCONSIN STAT. ch. 51

¶ 16. WISCONSIN STAT. ch. 51 establishes legislative policy "to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse." WIS. STAT. § 51.001(1). To accomplish these policies, WIS.

---

(1) APPLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35 (1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).

[7] *See* WIS. STAT. § 19.36(1).

STAT. § 51.15 describes an emergency process for taking a person into custody for a voluntary or involuntary evaluation and possible civil commitment. The process begins with § 51.15(1)(a), which authorizes a law enforcement officer, or other person authorized to take a juvenile into custody (hereafter referred to collectively as "the officer"), to take a person into custody, and deliver the person to a treatment facility, if the officer:

> has cause to believe that the individual is mentally ill, is drug dependent, or is developmentally disabled, and that the individual evidences any of the following:
>
> 1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.
>
> 2. A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his or her part, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm on his or her part.
>
> 3. A substantial probability of physical impairment or injury to himself or herself due to impaired judgment, as manifested by evidence of a recent act or omission . . . .

¶ 17. WISCONSIN STAT. § 51.15 directs the officer to prepare a report of the conduct observed by the officer and the third-party information obtained by the officer which caused the officer to take the person into emergency detention. In Milwaukee County, under § 51.15(4)(a) and (b),[8] the report is delivered to the treatment facility; it is not filed with the court until the

_____

[8] WISCONSIN STAT. § 51.15(4) states, in pertinent part:

director of the treatment facility decides that the person who is the subject of the report should be the subject of a civil commitment. By contrast, in all other counties in Wisconsin, under § 51.15(5),[9] the officer making the emergency detention not only delivers the report to the treatment facility, but also formally begins the commitment procedure by filing the report directly with the court.

¶ 18. The requirements for the substance of the report, which apply equally to Milwaukee County and the rest of the State,[10] are:

> (a) . . . .
>
> The law enforcement officer or other person shall deliver, or cause to be delivered, the statement to the detention facility upon the delivery of the individual to it.
>
> (b) . . . .
>
> If the individual is detained, the treatment director or his or her designee may supplement in writing the statement filed by the law enforcement officer or other person, and shall designate whether the subject individual is believed to be mentally ill, developmentally disabled or drug dependent, if no designation was made by the law enforcement officer or other person. The director or designee may also include other specific information concerning his or her belief that the individual meets the standard for commitment. The treatment director or designee shall then promptly file the original statement together with any supplemental statement and notification of detention with the court having probate jurisdiction in the county in which the individual was taken into custody. The filing of the statement and notification has the same effect as a petition for commitment under s. 51.20.

[9] *See* WIS. STAT. § 51.15(5), which states, in pertinent part: "The statement of emergency detention shall be filed by the officer or other person with the detention facility at the time of admission, *and with the court immediately thereafter.* The filing of the statement has the same effect as a petition for commitment under s. 51.20 . . . ." (Emphasis added.)

[10] *See* WIS. STAT. § 51.15(4)(a) and 51.15(5).

[T]he . . . officer . . . shall sign a statement of emergency detention which shall provide detailed specific information concerning the recent overt act, attempt, or threat to act or omission on which the belief under sub. (1) is based and the names of the persons observing or reporting the recent overt act, attempt, or threat to act or omission. *The . . . officer . . . is not required to designate in the statement whether the subject individual is mentally ill, developmentally disabled, or drug dependent, but shall allege that he or she has cause to believe that the individual evidences one or more of these conditions. . . .*

Wis. Stat. § 51.15(4)(a) & (5) (emphasis added).

¶ 19. Wisconsin Stat. ch. 51 defines various types of records, and establishes a method to determine whether they are confidential and to whom they may be released. We first determine whether the detention report retained by the MPD is covered by any of the statutory definitions.

Wisconsin Stat. § 51.01 **Definitions.**

. . . .

(17) "Treatment" means those psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabilitation of a mentally ill, alcoholic, drug dependent or developmentally disabled person.

Wisconsin Stat. §.51.30 **Records. (1)** Definitions.

. . . .

(am) "*Registration records*" include all the *records of* the department, county departments under s. 51.42 or 51.437,[11] treatment facilities, and *other persons providing services to the department, county depart-*

---

[11] Wisconsin Stat. § 51.42 describes the boards to be established in each county to coordinate delivery of community-based mental health, drug and alcohol treatment services, while Wis.

*ments, or treatment facilities,* that are *created in the course of providing services to individuals for mental illness,* developmental disabilities, alcoholism, or drug dependence.

(b) *"Treatment records" include the registration and all other records that are created in the course of providing services to individuals* for mental illness, developmental disabilities, alcoholism, or drug dependence and *that are maintained by the department, by county departments under s. 51.42 or 51.437 and their staffs, and by treatment facilities.* Treatment records do not include notes or records maintained for personal use by an individual providing treatment services for the department, a county department under s. 51.42 or 51.437, or a treatment facility, if the notes or records are not available to others.

(Emphasis and footnote added.)

¶ 20. Although the list of records defined is considerable, the detention reports specifically described in Wis. Stat. § 51.15 are not mentioned in the definition of either registration record or treatment record specifically or by incorporation by numerical reference. The City argues that the detention report is a "registration record" and asserts that because the MPD transports people to treatment facilities it is part of "other persons providing services to the department" as described in Wis. Stat. § 51.30(1)(am). The City does not contend that the MPD provides "treatment" as defined in Wis. Stat. § 51.01(17).

¶ 21. Wisconsin Stat. § 51.15 requires that the emergency detention report include "detailed specific information concerning the recent overt act, attempt, or threat to act or omission on which the belief under [§ 51.15(1)] is based and the names of the persons

Stat. § 51.437 describes similar boards to deliver more particularized services to the developmentally disabled.

observing or reporting the recent overt act, attempt, or threat to act or omission," including observations by the officer, and information from third parties. WIS. STAT. § 51.15(4)(a) and (1)(b), respectively. The statutes do not require that the emergency detention report disclose whether the person is a patient in any facility or that it include the type of information that would normally be disclosed to a treatment facility when a person is actually admitted for treatment, such as whether there is health insurance, prior hospitalizations, medical history and so forth. *See* § 51.15(4)-(5).

¶ 22. "Registration records," as defined in WIS. STAT. § 51.30(1)(am), include all records "that are created in the course of providing services to individuals for mental illness, developmental disabilities . . . ." However, it is not identification of a person who may have behaved dangerously, but identification of the person *as a patient* that is protected by the confidentiality accorded by WIS. STAT. § 51.30(1)(am) to "registration records." *See Daniel A. v. Walter H.*, 195 Wis. 2d 971, 989–90, 537 N.W.2d 103 (Ct. App. 1995) ("Since every patient is presumably identified in a record showing that he or she has received such services, *information which identifies a person as a patient* is subject to the privilege.") (emphasis added). As noted above, *see* ¶ 5 *supra*, Gray's status as a mental health patient became a matter of public record in his criminal case because it was disclosed in the evaluation of his competency to proceed to trial.

■■■■■

¶ 23. Because the MPD is resisting disclosure under WIS. STAT. § 19.35, it has the burden of showing that the documents withheld fall within a statutory or common law exception to disclosure. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979).

The MPD provided no copy of the disputed documents in this record. The MPD has thus failed to establish that the content of these documents identify Gray *as a patient,* and thus qualify as "registration records" under WIS. STAT. § 51.30(1)(am) and *Daniel A.* Accordingly, we conclude that the record in this case does not establish that the emergency detention reports in the possession of the MPD meet the definition of "registration record" as that term is defined by statute. *See* § 51.30(1)(am) and *Daniel A.,* 195 Wis. 2d at 989–90.

■

¶ 24. Additionally, to be exempt from disclosure, a document that is a "registration record" must also be a "treatment record" under the statute. *See* WIS. STAT. § 51.30(4). Were we to consider the emergency detention report a "registration record," it does not qualify under the statutory definition of "treatment records." Only those "registration records" "which are maintained by the department, by county departments under s. 51.42 or 51.437 and their staffs, and by treatment facilities" are "treatment records" under § 51.30(1)(b). Based upon the clear language of § 51.30(1)(b), the record retained by the MPD is not a document "maintained" by the entities listed in the statute. Rather, "the department" referred to in WIS. STAT. ch. 51 is the State Department of Health and Family Services. *See* WIS. STAT. § 46.011(1). Section 51.42 establishes county departments responsible for community programs for the mentally ill, chemically dependent and developmentally disabled with a governing board to organize and manage treatment programs.[12] The record does not indicate that the MPD is a part of the § 51.42 board, or that it

___

[12] WISCONSIN STAT. § 51.42(3), entitled "County department of community programs," states, in pertinent part:

contracts with that board to provide services. Finally, WIS. STAT. § 51.437 establishes a county department with expanded responsibility for services to persons with developmental disabilities.[13] The record here is devoid of any evidence that the MPD is either a part of the WIS. STAT. § 51.437 department or that it contracts with that department. There is also no claim that the MPD is a "treatment facility"[14] as defined under the

(a) *Creation.* Except as provided under s. 46.23 (3) (b), the county board of supervisors of any county, or the county boards of supervisors of 2 or more contiguous counties, shall establish a county department of community programs on a single-county or multicounty basis to administer a community mental health, developmental disabilities, alcoholism and drug abuse program, make appropriations to operate the program and authorize the county department of community programs to apply for grants-in-aid under s. 51.423. The county department of community programs shall consist of a county community programs board, a county community programs director and necessary personnel.

[13] WISCONSIN STAT. § 51.437, entitled "Developmental disabilities services," states, in pertinent part:

(4g) COUNTY DEPARTMENT OF DEVELOPMENTAL DISABILITIES SERVICES ESTABLISHED; INTEGRATION OF SERVICES.

. . . .

(c) In a county with a population of 500,000 or more, the county board of supervisors shall integrate day care programs for mentally retarded persons and those programs for persons with other developmental disabilities into the county developmental disabilities program.

. . . .

(4m) . . . (a) Within the limits of available state and federal funds and of county funds required to be appropriated to match state funds, establish a county developmental disabilities services program. Such services shall be provided either directly or by contract.

[14] WISCONSIN STAT. § 51.01, entitled, "Definitions," states, in pertinent part: "(19) 'Treatment facility' means any publicly

applicable statutes. Accordingly, even if the emergency detention reports arguably constitute "registration records," as argued by the City, they are not "treatment records" exempt from disclosure under § 51.30.

### 2. Confidentiality of records under the Physician-Patient Privilege—Wis. Stat. § 905.04

¶ 25. The legislature has also recognized that the confidentiality of mental health treatment records is fundamentally grounded on the physician-patient privilege, as reflected in the language of Wis. Stat. § 51.30(4)(a), when it excluded from confidentiality matters "otherwise provided" by Wis. Stat. § 905.04.[15] *See Billy Jo W. v. Metro*, 182 Wis. 2d 616, 643, 514 N.W.2d 707 (1994) ("When he pleaded not guilty by reason of mental disease or defect, he waived the physician-patient confidentiality that ordinarily pro-

---

or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs, community support programs and rehabilitation programs."

[15] Wisconsin Stat. § 905.04 states, in pertinent part:

**Physician-patient ... privilege.**

. . . .

**(4)** Exceptions.

. . . .

(c) *Condition an element of claim or defense.* There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which the patient relies upon the condition as an element of the patient's claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense.

tects mental health records") (relying on *State v. Taylor*, 142 Wis. 2d 36, 41, 417 N.W.2d 192 (Ct. App. 1987)).[16] Section 905.04(4) provides that the basic grant of confidentiality to communications between a patient and various physical and mental health care professionals is waived under certain circumstances. One of those circumstances is when "the patient relies upon the condition as an element of the patient's claim or defense." Section 905.04(4)(c).

■

¶ 26. Gray put his mental condition in issue in a public forum twice before the trial court here refused to order the release of the MPD detention reports. Gray first put his mental health in issue by requesting and obtaining a competency evaluation, and again later by entering a plea of not guilty by reason of mental disease or defect.[17] As our supreme court in Taylor explained:

[16] In *State v. Taylor*, 142 Wis. 2d 36, 41, 417 N.W.2d 192 (Ct. App. 1987), the court of appeals concluded, citing sec. 905.04 (4) (c), that by entering a plea of not guilty by reason of mental disease or defect, a defendant loses the physician-patient privilege with respect to his past psychiatric treatment records. The court of appeals also concluded that once the privilege is removed, the confidentiality of the past physician-patient privilege under sec. 51.30 (4) is also removed.

> *See also* sec. 51.30 (6) that provides: "Sections 905.03 and 905.04 supersede this section with respect to communications between physicians and patients . . . .

*Billy Jo W. v. Metro*, 182 Wis. 2d 616, 643 n.22, 514 N.W.2d 707 (1994).

[17] *See* Wisconsin Circuit Court Access (CCAP) records for Milwaukee County, Case No. 06CF3898. These are public records of which we may take judicial notice. The parties refer to this plea in their briefs before this court. Although no

> Taylor lost his physician-patient privilege with respect to his past psychiatric treatment records. Section 51.30(4)(a) provides confidentiality to records that are privileged, but does not create a cloak of confidentiality independent of the privilege itself. Once the privilege is removed the confidentiality is also removed. Therefore, when Taylor entered a plea of not guilty by reason of mental disease or defect, he lost his physician-patient privilege by virtue of the provisions of sec. 905.04(4)(c). Once he lost the privilege, he also lost confidentiality for his treatment records under sec. 51.30(4)(a).

*Taylor*, 142 Wis. 2d at 41. Similarly, Gray waived the confidentiality both accorded by Wis. Stat. § 905.04 and as that statute is incorporated as an exception to the confidentiality awarded by Wis. Stat. § 51.30(4)(a) when he put his mental health in issue. Accordingly, Gray's public assertion that he is mentally ill acts as a waiver of any privilege of confidentiality that may have otherwise attached to these records and, therefore, nondisclosure of the emergency detention reports is not required by this statute.

### C. Privacy statute—Wis. Stat. § 995.50

¶ 27. The City next argues that disclosure of the detention reports may be prohibited by Gray's statutory right of privacy, Wis. Stat. § 995.50, which provides, in relevant part:

**Right of privacy.**

. . . .

---

reference to the plea of not guilty by reason of mental disease or defect appears in the record before the trial court, that plea had been entered before the trial court made its decision. Records of the competency evaluation are part of the record that was before the trial court.

**(2)** In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another *of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private* or in a manner which is actionable for trespass.

. . . .

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. *It is not an invasion of privacy to communicate any information available to the public as a matter of public record.*

(Emphasis added.)

■■■■■

¶ 28. The information included in the emergency detention reports is essentially the conduct observed which led to an arrest. *See* Wis. Stat. § 51.15(4). Arrest records are public records and "the legislature has determined that individuals have no right of privacy in materials contained in public records that are open to the public generally." *Newspapers, Inc.*, 89 Wis. 2d at 432. The fact that the conduct observed and reported may be bizarre or embarrassing, or dangerous to the subject or others, does not avoid the statutory disclosure required to respond to an open records request when that conduct results in an arrest. *See id.* at 439–40 (Where arrest records are public, public policy interest weighs in favor of openness and against "the amorphous, ill-defined interests that the public might have in the protection of the reputations of persons who have been arrested."). Also, the fact that a person is

described as behaving in a dangerous way that may lead observers to conclude that the behavior is odd, idiosyncratic, bizarre or even crazy does not identify the individual as a patient of any treatment facility entitled to the non-disclosure privilege discussed in *Daniel A.*

¶ 29. Additionally, one cannot reasonably argue that disclosure of records that may relate to his mental condition would "be highly offensive to a reasonable person" when Gray himself has made his mental condition a matter of public record, and his status as a former mental health patient has thereby become a matter of public record. A person cannot reasonably require disclosure of his mental condition in one court and resist disclosure in another. *See* WIS. STAT. § 905.04(4). It follows that when Gray may not prevent disclosure of records that may relate to his mental condition, a third party, in this case the City, likewise may not resist disclosure on his behalf on privacy grounds.

¶ 30. Because there is no statute which clearly exempts the detention reports in the possession of the MPD from public records law disclosure, Watton is entitled to copies of those documents, unless a compelling public policy reason weighs against the statutory right to obtain the documents. Other than the policies discussed above, the parties have suggested no other public policy that weighs against disclosure of these records maintained by the MPD. We conclude, therefore, that Watton has a clear right to obtain copies of the MPD documents.

*II. Mandamus*

¶ 31. The open records statutes specifically authorize mandamus as a remedy to compel disclosure.

**(1)** MANDAMUS. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).

(a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

WIS. STAT. § 19.37(1)(a).

■■■■■■

¶ 32. "Mandamus is an extraordinary writ that may be used to compel a public officer to perform a duty that he or she is legally bound to perform." *See State ex rel. Greer v. Stahowiak*, 2005 WI App 219, ¶ 6, 287 Wis. 2d 795, 706 N.W.2d 161. In order for a writ of mandamus to be issued, there must be a clear legal right, a positive and plain duty, substantial damages, and no other adequate remedy at law. *Pasko v. City of Milwaukee*, 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72; *see also Greer*, 287 Wis. 2d 795, ¶ 6. The City argues that Watton has satisfied none of these criteria. We disagree.

¶ 33. As we have explained above, Watton has a clear right to the detention reports retained by the MPD. Under WIS. STAT. § 19.35, Hegerty had a plain duty to produce documents in the possession of the MPD which are not specifically exempted from disclosure by statute, common law or public policy considerations that outweigh the policy of the open records statutes. *See State ex rel. Journal/Sentinel , Inc. v. Arreola*, 207 Wis. 2d 496, 509, 558 N.W.2d 670 (Ct. App. 1996) ("[P]ublic records shall be open to the public

unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.") (citation and internal quotation marks omitted). As discussed above, neither statute, common law nor other public policy referred to by the parties in this appeal prevents disclosure of the detention reports retained by the MPD. Watton is damaged by MPD's failure to disclose public information in the same manner that any member of the public, or of the media, is damaged when the policy of open records is improperly thwarted.

¶ 34. The City argues that Watton has another adequate remedy (other than forcing the MPD to produce the documents admittedly in its possession—documents it considers "treatment records") because he can ask another court to order the treatment facility to release the treatment records in its possession. The City's argument is premised upon its reliance that the records held by the MPD are "treatment records" and, therefore, Wis. Stat. § 51.30(4)(b)[18] applies. However, as we have seen, the MPD records are not "treatment

---

[18] Wisconsin Stat. § 51.30 **Records.**

. . . .

(4) Access to registration and treatment records.

. . . .

(b) *Access without informed written consent.* Notwithstanding par. (a), treatment records of an individual may be released without informed written consent in the following circumstances, except as restricted under par. (c):

. . . .

4. Pursuant to lawful order of a court of record.

569

records" under those statutes, and those statutes thus have no application to the mandamus proceeding.

¶ 35. The open records statute specifically permits a mandamus action to compel production of improperly withheld public records.[19] Watton followed the requirements of the applicable statutes. He is entitled to the records in the possession of the MPD that were improperly withheld. He has no other adequate remedy to obtain the MPD records. Accordingly, we reverse and remand to the trial court to enter an order directing Hegerty to produce the requested detention reports in the possession of the MPD.

III. *Time of production of requested records other than the emergency detention records*

¶ 36. Finally, Watton argues that the City failed to timely produce the requested documents. For purposes of the production of public records under WIS. STAT. § 19.35(4)(a), the statutory language "as soon as practicable" implies a reasonable time for response— otherwise the legislature would have established a specific deadline. We conclude that determining what is a reasonable time depends, at least in part, upon the nature and scope of the request, and the staff and the other resources reasonably available to process the request. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (We are to interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). Whether the production was

---

[19] *See* WIS. STAT. § 19.37(1)(a), *supra* ¶ 31.

accomplished "as soon as practicable" presents a mixed question of fact and law. Here, it is undisputed that the requested records were produced on October 19, 2006, forty-one days after Watton's September 8 request. The trial court properly considered the scope of the request and the staff assigned by the MPD to open records responses. The record supports the trial court's conclusion that the production complied with the requirements of the statute. We affirm that portion of the trial court's decision.

*By the Court.*—Order affirmed in part; reversed in part; and cause remanded with directions.