Michael J. WATTON d/b/a Watton Law Group,
Petitioner-Appellant,†

v.

Nanette H. HEGERTY Chief of Police and
as official custodian of records for the
City of Milwaukee Police Department,
Respondent-Respondent-Petitioner.

Supreme Court

*No. 2006AP3092. Oral argument April 4, 2008.
—Decided July 1, 2008.*

2008 WI 74

(Also reported in 751 N.W.2d 369.)

† Motion for reconsideration denied 9/8/08. Gableman, J.,
did not participate.

For the respondent-respondent-petitioner the cause was argued by *Melanie R. Swank,* assistant city attorney, with whom on the briefs was *Grant F. Langley,* city attorney, Milwaukee.

For the petitioner-appellant there was a brief by *Michael J. Watton, Michael J. Maloney,* and *Watton Law Group,* Milwaukee, and oral argument by *Michael J. Watton.*

An amicus brief was filed by *Maureen McGlynn Flanagan,* assistant attorney general, and *J.B. Van Hollen,* attorney general, on behalf of the Wisconsin Department of Justice.

An amicus brief was filed by *James G. Godlewski,* Neenah, on behalf of the Government Lawyers Division of the State Bar and International Municipal Lawyers Association, and oral argument by *James G. Godlewski.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] reversing a circuit court[2] order denying Michael J. Watton's petition for a writ of mandamus. Watton filed a petition for

---

[1] *Watton v. Hegerty,* 2007 WI App 267, 306 Wis. 2d 542, 744 N.W.2d 619.

[2] The Honorable Clare L. Fiorenza, presided.

a writ of mandamus to compel the production of statements of emergency detention[3] kept by the City of Milwaukee Police Department. The issue presented is

[3] Statements of emergency detention are created pursuant to Wis. Stat. § 51.15(1)(a) and (4)(a) (2005–06). Those sections provide, respectively, in relevant part:

(1) Basis for detention. (a) A law enforcement officer or other person authorized to take a child into custody under ch. 48 or to take a juvenile into custody under ch. 938 may take an individual into custody if the officer or person has cause to believe that the individual is mentally ill, is drug dependent, or is developmentally disabled, and that the individual evidences any of the following:

1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.

2. A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his or her part, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm on his or her part.

3. A substantial probability of physical impairment or injury to himself or herself due to impaired judgment, as manifested by evidence of a recent act or omission. . . .

. . . .

(4) Detention procedure; Milwaukee County. (a) In counties having a population of 500,000 or more, the law enforcement officer or other person authorized to take a child into custody under ch. 48 or to take a juvenile into custody under ch. 938 shall sign a statement of emergency detention which shall provide detailed specific information concerning the recent overt act, attempt, or threat to act or omission on which the belief under sub. (1) is based and the names of the persons observing or reporting the recent overt act, attempt, or threat to act or omission. The law enforcement officer or other person is not required to designate in the statement whether the subject individual is mentally ill, developmentally disabled, or drug dependent, but shall allege that he or she has cause to believe that the individual evidences one or more of these conditions. The law enforcement officer or other

whether, upon an open records request to the City of Milwaukee Police Department, provisions of the Mental Health Act, ch. 51 of the Wisconsin Statutes, preclude disclosure of duplicate copies of statements of emergency detention that are in the possession of the police department, absent written informed consent or a court order. We conclude that it does; and therefore, we reverse the decision of the court of appeals.

## I. BACKGROUND[4]

¶ 2. On September 8, 2006, Watton hand-delivered an open records request to the City of Milwaukee Police Department,[5] pursuant to Wis. Stat. §§ 19.31–39.[6] Watton requested two documents pertain-

person shall deliver, or cause to be delivered, the statement to the detention facility upon the delivery of the individual to it.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[4] For purposes of this appeal, the facts of this case are not in dispute.

[5] At the time of the request, Nannette Hegerty was the Chief of the City of Milwaukee Police Department. As Chief, she was the police department's official records custodian. Accordingly, for the remainder of this opinion, we refer to her as "the custodian."

[6] Wisconsin Stat. §§ 19.31–39 constitute Wisconsin's open records law. Wisconsin Stat. §§ 19.35 and 19.36 are most pertinent here. They provide, respectively, in relevant part:

19.35 Access to records; fees. (1) Right to inspection. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

59

ing to Sidney Kente Gray[7] that are relevant to this appeal:[8] (1) a signed statement of emergency detention for Sidney Kente Gray created on or about June 13 or June 14, 2006; and (2) a signed statement of emergency detention for Sidney Kente Gray created in January 2006.

¶ 3. On October 19, 2006, through her designee at the City of Milwaukee Police Department, the records

. . . .

19.36 Limitations upon access and withholding. (1) Application of other laws. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).

[7] The records request referred to Gray by nine aliases, six addresses and two dates of birth. Notwithstanding the alternate identities Watton ascribed to Gray, the custodian states there is no confusion over the identity of the individual Watton refers to in his records request.

[8] Watton is counsel for the family of and the Estate of Thomas Moore, II. Moore was shot and killed on July 22, 2006. Gray is allegedly his assailant. Watton requested Gray's statements of emergency detention in the course of investigating whether to file suit on his clients' behalf against the City of Milwaukee Police Department under 48 U.S.C. § 1983.

Gray had been in and out of custody in the month leading up to Moore's murder. On June 13, 2006, Gray was detained by a City of Milwaukee police officer, who generated a statement of emergency detention as a result of his encounter with Gray that day. Gray was civilly committed to the Milwaukee County Health Complex from that date until June 20, 2006, when he was released. Gray was arrested the next day, June 21, and was released from custody on July 9. Gray was again arrested eight days later, on July 17, and was again released from custody on July 21. He allegedly killed Moore by gunshot the next day, July 22.

custodian denied Watton's request for Gray's statements of emergency detention. However, before receiving the police department's written response to his records request, Watton filed a petition for a writ of mandamus to compel the production of the records he had requested under the open records law. The circuit court denied Watton's petition and he appealed.

¶ 4. The court of appeals reversed. *Watton v. Hegerty,* 2007 WI App 267, 306 Wis. 2d 542, 744 N.W.2d 619. It held that Watton satisfied all four requirements for obtaining a writ of mandamus. First, the court of appeals concluded that Watton had a clear right to the records he sought because statements of emergency detention are neither "registration" nor "treatment" records, as described in Wis. Stat. § 51.30(1)(am) and (1)(b); and therefore, the records are not exempt from disclosure. *Id.,* ¶ 33. Second, it concluded that the custodian had a plain duty under the open records law, Wis. Stat. § 19.35, to release the records. *Id.,* ¶ 30. Third, the court concluded that "the policy of open records [was] improperly thwarted" by the City of Milwaukee Police Department's decision not to disclose records to Watton, and as a result Watton incurred damages. *Id.,* ¶ 33. Finally, the court concluded that Watton had no other remedy at law for obtaining the records, because the remedy advanced by the custodian, i.e., that Watton could seek a court order for the release of the records pursuant to § 51.30(4)(b)4, was inapplicable as that remedy pertains only to "registration" or "treatment" records, as described in § 51.30(1)(am) and (1)(b), and the records sought here did not fit those definitions. *Id.,* ¶ 34.

¶ 5. We granted the custodian's petition for review and now reverse.

## II. DISCUSSION

### A. Standard of Review

¶ 6. We review a decision regarding a petition for a writ of mandamus under the erroneous exercise of discretion standard. *State ex rel. Lewandowski v. Callaway*, 118 Wis. 2d 165, 171, 346 N.W.2d 457 (1984). However, we interpret statutes independently, "but benefiting from the analyses of the court of appeals and the circuit court." *Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110. We also independently review the application of the open records law and the Mental Health Act to undisputed facts, in regard to a petition for mandamus. *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 1, 259 Wis. 2d 276, 655 N.W.2d 510.

### B. Writ of Mandamus

¶ 7. A petition for a writ of mandamus is a proper means by which to challenge a refusal to disclose documents sought under the open records law. *State ex rel. Greer v. Stahowiak*, 2005 WI App 219, ¶ 7, 287 Wis. 2d 795, 706 N.W.2d 161. Mandamus is an "extraordinary writ" that may be employed to compel public officers to perform a duty that they are legally obligated to perform. *Id.*, ¶ 6.

¶ 8. In order to obtain a writ of mandamus compelling disclosure of records, the petitioner must establish that four prerequisites are satisfied: (1) the peti-

tioner has a clear legal right to the records sought;[9] (2) the government entity has a plain legal duty to

[9] Given this case's unusual posture, whereby Watton petitioned for a writ of mandamus before the police department denied his records request, there is a lack of clarity in our case law regarding whether it is Watton or whether it is the custodian who bears the initial burden of persuasion. We have recognized that, within the open records law, the legislature has created a presumption of accessibility to public records. *Nichols v. Bennett,* 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996); *see also, Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 426–27, 279 N.W.2d 179 (1979). Accordingly, in cases in which the records custodian denies an open records request, the burden is ordinarily on the custodian to state specific reasons for denying access that are supported by the statute, common law or public policy. *See Breier,* 89 Wis. 2d at 427; Wis. Stat. § 19.35(1)(a). "If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue." *Breier,* 89 Wis. 2d at 427.

This case presents a different posture, however, than the one contemplated in *Breier.* Watton filed a petition for a writ of mandamus *before* the City of Milwaukee Police Department denied access to the statements of emergency detention related to Gray and, accordingly, also before the City of Milwaukee Police Department provided him reasons for its subsequent denial.

While Watton jumped the gun by filing his petition for a writ before the City of Milwaukee Police Department denied him access to certain records he sought, we decline to place the burden of persuasion entirely on him, as would normally follow from filing a petition for mandamus. *See State ex rel. Greer v. Stahowiak,* 2005 WI App 219, ¶ 7, 287 Wis. 2d 795, 706 N.W.2d 161. We do this because in circumstances in which a custodian denies access to records, the custodian must articulate reasons why it denied access. *Breier,* 89 Wis. 2d at 427. However, Watton must nevertheless prove the four prerequisites to the issuance of the writ he seeks. Accordingly, we consider both Watton's arguments for why he has a "clear right" to the records and the custodian's arguments for why he does not.

disclose the records; (3) substantial damages would result if the petition for mandamus was denied; and (4) the petitioner has no other adequate remedy at law. *See id.,* ¶ 6; *see also, Pasko v. City of Milwaukee,* 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72.

■

¶ 9. In considering Watton's petition for mandamus, we are mindful of the policies underlying the open records law:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information.

Wis. Stat. § 19.31. Accordingly, Wisconsin "recognizes a presumption of accessibility to public records." *Nichols v. Bennett,* 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996).

■

¶ 10. However, the presumption of access does not create an absolute right of access. Access to records may be denied where there is a specific statutory exemption to disclosure, Wis. Stat. § 19.36, or where there is a common law or public policy exception, *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 426–27, 279 N.W.2d 179 (1979).[10]

---

[10] *But see, Hempel v. City of Baraboo,* 2005 WI 120, ¶ 27, 284 Wis. 2d 162, 699 N.W.2d 551, in which we stated that "[w]hen a person makes an open records request for records

## C. Mental Health Act

¶ 11. The parties agree that the statements of emergency detention that Watton seeks are created under provisions of the Mental Health Act, ch. 51 of the Wisconsin Statutes. The custodian contends, however, that the Mental Health Act specifically exempts the statements from disclosure, when read in combination with Wis. Stat. § 19.36(1). The custodian argues that the statements are "registration records," as described in Wis. Stat. § 51.30(1)(am), which also categorizes them as "confidential and . . . privileged" "treatment records," as provided in § 51.30(1)(b) and (4). Accordingly, the custodian maintains that Watton does not have a "clear legal right" to Gray's statements of emergency detention. *Greer*, 287 Wis. 2d 795, ¶ 6. Moreover, the custodian argues, a writ of mandamus cannot issue because the Mental Health Act provides Watton another remedy at law, i.e., under § 51.30(4)(a)4, he may petition the court to obtain the records.

¶ 12. Watton counters that statements of emergency detention cannot be considered "treatment records" because only those records that are "maintained" by the Department of Health and Family services, its county branches or its staff, or by treatment facilities constitute "treatment records," under Wis. Stat. § 51.30(1)(b). He argues that the City of Milwaukee Police Department does not fit within these categories of entities "maintain[ing]" the statements of emer-

containing personally identifiable information under Wis. Stat. § 19.35(1)(am), the person is entitled to inspect the records unless the surrounding factual circumstances reasonably fall within one or more of the statutory exceptions to (am)." Accordingly, such requests are not subject to common law or public policy exceptions. *Id.*, ¶ 34.

65

gency detention. Accordingly, he contends that the Mental Health Act does not specifically exempt statements of emergency detention that are in the possession of the police department from disclosure, under Wis. Stat. § 19.36(1).

¶ 13. Because he contends there is no statutory exemption to the open records law that would keep statements of emergency detention private, Watton argues that, in weighing the balance between private and public interests under the open records law, the balance tips toward disclosure because there is no "overriding public interest in keeping the records confidential." *Woznicki v. Erickson,* 202 Wis. 2d 178, 181, 549 N.W.2d 699 (1996). Watton contends this is so because Gray has put his mental competency at issue in defending the criminal charges filed against him related to the Thomas Moore shooting.[11] The psychological evaluation Gray underwent after pleading not guilty by reason of mental disease or defect is available through the Milwaukee County Circuit Court. Accordingly, Watton argues that Gray cannot keep private those facts he has already made public.

¶ 14. To resolve the parties' dispute over the statements of emergency detention, we interpret various provisions of chs. 51 and 19 of the Wisconsin Statutes. "[S]tatutory interpretation 'begins with the

---

[11] *See* note 8, *supra.* Gray defended against charges filed by the State as a result of his alleged shooting of Moore, in part, by pleading not guilty by reason of mental defect or disease. Pursuant to Wis. Stat. § 971.16, the circuit court in the criminal case ordered Gray to undergo an examination to assess his competency to stand trial. Gray underwent the examination, and the examining doctor recommended to the court that Gray was competent to stand trial.

language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell*, 2000 WI 76, 236 Wis. 2d 211, 232, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but from the context. *Id.*, ¶ 46. We interpret statutory language in the context in which those words are used; "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*

■■■■■

¶ 15. If the words chosen for the statute exhibit a "plain, clear statutory meaning," without ambiguity, the statute is applied according to the plain meaning of the statutory terms. *Id.*, ¶ 46 (quoting *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous. *Id.* at ¶ 47. "It is not enough that there is a disagreement about the statutory meaning; the test for ambiguity examines the language of the statute 'to determine whether "well-informed persons should have become confused," that is, whether the statutory . . . language reasonably gives rise to different meanings.' " *Id.* (quoting *Bruno*, 260 Wis. 2d 633, ¶ 21). When a statute is ambiguous, we may consult extrinsic sources to discern its meaning. *Id.* at ¶¶ 48, 50. While extrinsic sources are usually not consulted if the statutory language bears a plain meaning, we nevertheless may consult extrinsic sources "to confirm or verify a plain-meaning interpretation." *Id.*, ¶ 51.

¶ 16. We begin with Wis. Stat. § 51.15, which describes the role of a police officer in creating a statement of emergency detention, and with Wis. Stat. § 51.30, which defines certain types of mental health records and describes how one may obtain access to those records. We consider the relevant language of these sections of ch. 51 to ascertain whether the legislature intended to protect statements of emergency detention from disclosure.

¶ 17. The relevant portions of Wis. Stat. § 51.15(1)(a) and (4)(a) are contained in footnote 3, *supra*. Section 51.15(2) is also relevant to our inquiry, and it provides in pertinent part:

> Facilities for detention. The law enforcement officer or other person authorized to take a child into custody under ch. 48 or to take a juvenile into custody under ch. 938 shall transport the individual, or cause him or her to be transported, for detention and for evaluation, diagnosis and treatment if permitted under sub. (8) to any of the following facilities:
>
> . . . .
>
> (c) A state treatment facility[.]

¶ 18. Portions of Wis. Stat. 51.30(1) and (4) also bear on the issue presented. They provide in relevant part:

> (1) Definitions. In this section:
>
> . . . .
>
> (am) "Registration records" include all the records of the department,[12] county departments . . . treat-

---

[12] The "[d]epartment" is not defined in ch. 51. Rather, it is defined in chapter 46:

ment facilities, and other persons providing services to the department, county departments, or treatment facilities, that are created in the course of providing services to individuals for mental illness . . . .

(b) "Treatment records" include the registration and all other records that are created in the course of providing services to individuals for mental illness . . . and that are maintained by the department, by county departments . . . and their staffs, and by treatment facilities. . . .

. . . .

(4) Access to registration and treatment records. (a) *Confidentiality of records.* Except as otherwise provided in this chapter and ss. 118.125(4), 610.70(3) and (5), 905.03 and 905.04, all treatment records shall remain confidential and are privileged to the subject individual. . . .

(b) *Access without informed written consent.* Notwithstanding par. (a), treatment records of an individual may be released without informed written consent in the following circumstances . . .:

. . . .

4. Pursuant to lawful order of a court of record.

¶ 19. From the text of these statutory provisions, we observe the following relevant legislative directives: (1) a police officer may take a person into custody if the officer has reason to believe the person is mentally ill, and it is substantially probable that the

---

46.011 Definitions. In chs. 46, 48, 50, 51, 54, 55 and 58:

(1) "Department" means the department of health and family services.

Wis. Stat. § 46.011(1).

person will cause physical harm, Wis. Stat. § 51.15(1); (2) when an officer takes a person into custody under such circumstances, the officer fills out and signs a statement of emergency detention related to the individual and to the circumstances the officer witnessed that justify taking the person into custody, § 51.15(4); (3) the officer is obligated to either transport or arrange for the transport of such a person to a state treatment facility for evaluation, diagnosis and potential treatment, § 51.15(2); (4) records that are created in the course of providing services to persons for mental illness and maintained by the department or treatment facility are "registration records," Wis. Stat. § 51.30(1)(am); (5) "treatment records" include all "registration records" that are "maintained" by treatment facilities, § 51.30(1)(b); (6) "treatment records" must[13] remain confidential and are privileged, § 51.30(4)(a); and (7) "treatment records" may be released by court order, when the person to whom the records relate does not provide written informed consent authorizing their release, § 51.30(4)(b)4.

¶ 20. We conclude that the sum of these directives, as they relate to Gray, is that the statements of emergency detention are "registration records"; and therefore, they are exempt from the public records

---

[13] The legislature has established that "all treatment records *shall* remain confidential and are privileged." Wis. Stat. § 51.30(4)(a) (emphasis added.) We have "characterized . . . 'shall' as mandatory unless a different construction is required by the statute to carry out the clear intent of the legislature." *Forest County v. Goode*, 219 Wis. 2d 654, 663, 579 N.W.2d 715 (1998). Given the sensitivity of "treatment records" and the strong legislative "interest in keeping private the details of an individual's mental and emotional condition," *Billy Jo W. v. Metro*, 182 Wis. 2d 616, 632, 514 N.W.2d 707 (1994), we conclude that "shall" has a mandatory meaning within § 51.30(4)(a).

request. They are also "confidential and . . . privileged" "treatment records" protected by statute. Wis. Stat. § 51.30(1)(b) and (4). Our conclusion rests on the following rationale. "Registration records" are records of the Department of Health and Family Services created as a result of "providing services" to individuals for mental illness. § 51.30(1)(am). Statements of emergency detention fit within this definition of "registration records" because the officer creating the statement of emergency detention "provid[es] services to . . . individuals" in regard to mental illness. *Id.* The officer provides services in at least two respects: (1) as required by Wis. Stat. § 51.15(4)(a), the officer fills out and signs the statement of emergency detention form, thereby relaying important factual information that the person who is in need of assistance may not be able to provide to the treatment facility; and (2) as required by § 51.15(2), the officer either transports the individual to a state treatment facility, or arranges for the individual to be transported to a state treatment facility. The transport also benefits the treatment facility, as well as the individual. These services that the officer provides cause the statements of emergency detention to fit squarely within the Mental Health Act's description of "registration records." § 51.30(1)(am).

¶ 21. Watton contends, however, that notwithstanding the inclusion of some statements of emergency detention within the classification of "registration records," the records he seeks are not "treatment records" because they are not being "maintained" by a "treatment facility" or a "department" of the type listed in Wis. Stat. § 51.30(1)(b). Watton asserts that these records are "maintained" by the City of Milwaukee Police Department. Watton concedes that ch. 51 precludes him from obtaining the statements of emergency

71

detention that are physically in the possession of a treatment facility. However, he contends that ch. 51 does not preclude him from obtaining statements of emergency detention in the physical possession of the police department. Watton reasons that, although the copies of statements of emergency detention kept within the police department are duplicate copies of the statements maintained by the treatment facility, the original and its duplicate do not warrant the same treatment under the statutes. We disagree.

¶ 22. The plain language of ch. 51 coupled with our obligation to construe statutes to avoid absurd results causes us to conclude that copies of statements of emergency detention in the possession of the police department do not lose their classification as records "maintained" by a treatment facility. Accordingly, the copies of the statements of emergency detention in the possession of the police department continue to be "treatment records" exempt from disclosure.

¶ 23. First, Wis. Stat. § 51.15(4)(b) states that the treatment facility may, within its discretion, alter the statement of emergency detention the officer completes and files with the facility. The facility then files the original statement of emergency detention and the supplement to that statement, if any, with the court having jurisdiction in the county in which the officer took the person into custody. Section 51.15(4)(b) provides in relevant part:

> (b) Upon delivery of the individual [to the treatment facility and] . . . [i]f the individual is detained, the treatment director or his or her designee may supplement in writing the statement filed by the law enforcement officer . . ., and shall designate whether the subject individual is believed to be mentally ill, developmentally disabled or drug dependent, if no

> designation was made by the law enforcement officer . . . . The treatment director or designee shall then promptly file the original statement together with any supplemental statement and notification of detention with the court having probate jurisdiction in the county in which the individual was taken into custody.

When the treatment facility has the original and copies of the statement of emergency detention and it files the original with the court, the copies the treatment facility retains do not change their character. They contain the same confidential mental health information as they did when all the documents were physically in the hands of the treatment facility, and the concern for maintaining their confidentiality remains the same.

¶ 24. The obligations that Wis. Stat. § 51.15(4)(b) places on treatment facility directors or their designees with respect to statements of emergency detention indicate that the copies of the statements of emergency detention in the possession of the City of Milwaukee Police Department are nevertheless records "maintained" by the treatment facility. For example, facility directors or their designees are charged with supplementing the record filed by the police officer, if needed, and with filing the statement of emergency detention and any supplement with the appropriate circuit court, § 51.15(4)(b), thereby maintaining the statement in the form most helpful to the circuit court.[14] In contrast, the City of Milwaukee Police Department is not charged with any obligation with respect to statements of emer-

---

[14] Although the treatment facility is statutorily permitted to supplement the statement of emergency detention as it deems necessary before submitting the statement to a court, the treatment facility is not obligated also to supplement the copy of the statement of emergency detention that the police department retains.

73

gency detention, after the original statements have been delivered to the detention or treatment facility. The police department retains a copy merely to keep track of transport costs and whether the Department of Health and Family Services, pursuant to Wis. Stat. § 51.20(14), has reimbursed the police department for those costs.[15]

■■

¶ 25. Second, Wis. Stat. § 51.30 evidences the legislature's decision to keep mental health treatment information confidential. *See Billy Jo W. v. Metro,* 182 Wis. 2d 616, 632, 514 N.W.2d 707 (1994). As we have explained, there is a "strong [legislative] interest in keeping private the details of an individual's mental and emotional condition." *Id.* The confidentiality provisions of ch. 51 are not designed to protect pieces of paper; they are designed to protect information about individuals who receive mental health care services. Accordingly, we would offer an absurd interpretation of § 51.30(1)(b), which describes treatment records, if we were to conclude that the copies of statements of emergency detention physically kept at the City of Milwaukee Police Department are not "treatment records" simply because those duplicate copies are not in the physical possession of a treatment facility or another department listed in § 51.30(1)(b). Such an

---

[15] Wisconsin Stat. § 51.20(14) provides in relevant part:

> Transportation; expenses. The sheriff or any law enforcement officer shall transport an individual who is the subject of a petition and execute the commitment . . . . The director of the county department under s. 51.42 or 51.437 may request the sheriff to provide transportation for a subject individual or may arrange any other method of transportation which is feasible. The county department may provide reimbursement for the transportation costs from its budgeted operating funds.

interpretation would not protect the confidentiality of mental health information about individuals. Accordingly, we conclude that statements of emergency detention in the possession of a treatment facility, or a department listed in § 51.30, or in the possession of the police department, are "treatment records" within the meaning of § 51.30(1)(b).

¶ 26. Watton acknowledges that ch. 51 prohibits him from obtaining the statements of emergency detention kept by the treatment facility absent written informed consent or a court order; however, he argues that ch. 51 does not prohibit him from obtaining the statements of emergency detention kept by the police department. As we have explained, Watton's interpretation is contrary to the confidentiality provisions of ch. 51 and, if applied, would lead to an absurd result. We avoid statutory interpretations that lead to absurd results. *See, e.g., Kalal,* 271 Wis. 2d 633, ¶ 46. In any event, as we have recounted, the plain meaning of the provisions of ch. 51 do not permit such an interpretation.[16]

---

[16] Although the plain meaning of the open records law and of ch. 51 support our interpretation, we observe that the legislative history of the open records law also supports our interpretation. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110 (stating that we may consult legislative sources, even when a statute is not ambiguous, to "confirm or verify a plain-meaning interpretation"). Wisconsin's *existing* open records law, Wis. Stat. §§ 19.31–39, was created in 1981. The Legislative Reference Bureau's analysis of the bill creating the open records law stated that, while "the right of inspection is reinforced" by the bill, such a right is limited by "specific laws," such as chapter 51, forbidding access to certain records:

This bill recodifies, clarifies and amplifies state law concerning access to public records. . . . Although there is a presumption in favor of public access, certain exceptions to the right of access

¶ 27. Our analysis of ch. 51 shows that statements of emergency detention are "treatment records." The Mental Health Act specifically exempts such records from disclosure, designating them as "confidential and . . . privileged to the subject individual." Wis. Stat. § 51.30(4). Accordingly, the custodian has succeeded in showing that the statements of emergency detention withheld by the City of Milwaukee Police Department fit within a statutory exemption from disclosure set out in Wis. Stat. § 19.35(1)(a) and Wis. Stat. § 19.36(1). Correspondingly, Watton has not succeeded in showing that he has a "clear legal right" to the statements of detention, as the standard for the granting of a writ of mandamus requires.[17] *Greer,* 287 Wis. 2d 795, ¶ 6. Consequently, we reverse the court of appeals and uphold the circuit court's denial of Watton's petition for a writ of mandamus.[18]

have become accepted . . . . Such exceptions include instances in which records are expressly closed by specific laws.

Drafting File for ch. 335, Laws of 1981, *Analysis by the Legislative Reference Bureau* of 1981 S.B. 250, Legislative Reference Bureau, Madison, Wis.

[17] Because Watton has failed to show that he satisfies the first of the four prerequisites to mandamus, we do not consider whether he satisfies the other three: the custodian has a plain duty to disclose the records he seeks; substantial damages would result if the petition for the writ were denied; and Watton has no other adequate remedy at law. *Greer,* 287 Wis. 2d 795, ¶ 6. Furthermore, Watton may indeed have another remedy at law, pursuant to Wis. Stat. § 51.30(4)(a)4.

[18] In addition to reversing the circuit court's denial of Watton's petition, the court of appeals also upheld the circuit court's conclusion that the 41 days it took the City of Milwaukee Police Department to respond to Watton's records request

¶ 28. Because we conclude that the Mental Health Act by its terms defines statements of emergency detention as "treatment records," which it expressly exempts from disclosure without written informed consent or a court order, we need not address Watton's argument that the balance of interests between Wisconsin's policy of open government and Gray's interests in keeping his mental health records private tips in favor of disclosure. *See Woznicki*, 202 Wis. 2d 178.

¶ 29. We also note that our decision does not necessarily thwart Watton's attempt to obtain Gray's statements of emergency detention. As provided in Wis. Stat. § 51.30(4)(a)4, Watton may petition the appropriate circuit court for an order compelling release of the statements. Beyond what we have just stated, we express no opinion with respect to the issuance of such an order. If Watton chooses to seek a § 51.30(4)(a)4 order, we leave it to the sound discretion of the circuit court to grant Watton's motion for an order, deny Watton's motion, or to grant the motion in part, permitting only partial disclosure of the statements of emergency detention.

## III. CONCLUSION

¶ 30. The issue presented is whether, upon an open records request to the City of Milwaukee Police Department, provisions of the Mental Health Act, ch. 51 of the Wisconsin Statutes, preclude disclosure of duplicate copies of statements of emergency detention

complied with the requirement in Wis. Stat. § 19.35(4)(a) that a governmental entity respond to a request for records "as soon as practicable and without delay." Watton did not appeal the court of appeals decision with respect to compliance with § 19.35(4)(a); therefore, we do not consider that issue.

that are in the possession of the police department, absent written informed consent or a court order. We conclude that it does; and therefore, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 31. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree that the records at issue in the instant case are "treatment records" and are subject to the confidentiality and privilege provisions of Wis. Stat. § 51.30(4).[1]

¶ 32. The majority opinion purports to reach this result by relying on the "plain language" of the statutory definition of treatment records in § 51.30(1)(b). It does not. The holding in the majority opinion is at odds with the text of § 51.30(1)(b).

¶ 33. "Treatment records" are defined in Wis. Stat. § 51.30(1)(b) by how they are created and by whom they are maintained. The statutory definition of treatment records is as follows:

> "Treatment records" include the registration and all other records that are created in the course of providing services to individuals for mental illness . . . and that are *maintained by the [Department of Health Services], by county departments under s. 51.42 or 51.437 and their staffs, and by treatment facilities* (emphasis added).

¶ 34. In the instant case, the original record at issue undisputedly was maintained by a treatment

---

[1] Wisconsin Stat. § 51.30(4)(a) provides that except as otherwise stated, "all treatment records shall remain confidential and are privileged to the subject individual. . . . " The record at issue does not fall within any of the excepted provisions set forth in § 51.30(4).

facility. Consequently, the original record fits the statutory definition of a "treatment record."

¶ 35. Watton, however, sought a copy of that treatment record from the police department. No treatment facility (or other entity enumerated in Wis. Stat. § 51.30(1)(b)) "maintained" the copy of the treatment record that was in the possession of the police department. The copy was just on file with the police department for police department administrative purposes.

¶ 36. Confusingly, the majority opinion appears to conclude at ¶ 24 that the copy of the treatment record on file with the police department is "maintained" by the treatment facility, because treatment facility directors or their designees are charged by statute with supplementing the original record that the treatment facility possesses. The majority opinion's reasoning is odd. The obligation of treatment facility directors or their designees to supplement the original record on file with the treatment facility shows only what Watton already concedes—that the original record on file with the treatment facility is "maintained" by the treatment facility. The question in the instant case is whether the copy of the record on file with the police department also is "maintained" by the treatment facility. The majority opinion concedes, as it must, that treatment facility directors or their designees are not statutorily required to supplement copies of treatment records that happen to be on file with the police department or any other entity.[2]

¶ 37. Consequently, the copy of the treatment record filed with the police department was not in the possession of, or supplemented or in any other sense "maintained" by, a treatment facility. The copy of the

_____

[2] Majority op., ¶ 24 n.14.

treatment record thus does not fall within the text of § 51.30(1)(b); the copy was not maintained by any of the statutorily enumerated persons or entities. The majority opinion errs in concluding that copies of statements of emergency detention in the possession of the police department are records "maintained" by a treatment facility.

¶ 38. The majority opinion's repeated statements that it relies on the plain language of the statute to hold that a copy of a treatment record filed with the police department is maintained by the treatment facility[3] make no sense in light of the text of the statute.

¶ 39. Indeed, the majority opinion implicitly concedes as much when it acknowledges that it must lean on the "absurd results" doctrine in deciding the present case.[4] The doctrine that a statute will not be interpreted to reach an absurd result is used to avoid interpreting a statute in accordance with its plain language or is used when a statute is subject to more than one reasonable interpretation.[5]

---

[3] *See, e.g.,* majority op., ¶ 22, 25, 26 & n.16.

[4] *See id.,* ¶ 22.

[5] *See Teschendorf v. State Farm Ins. Cos.,* 2006 WI 89, ¶ 32, 293 Wis. 2d 123, 717 N.W.2d 258 ("Although the meaning of the statute appears to be plain, a literal application of the language would be absurd."); *Seider v. O'Connell,* 2000 WI 76, ¶ 32, 236 Wis. 2d 211, 612 N.W.2d 659 ("As a general rule, courts apply the ordinary and accepted meaning of language in statutes, unless it leads to an absurd result.") (internal citation omitted); *State v. Delaney,* 2003 WI 9, ¶ 15, 259 Wis. 2d 77, 658 N.W.2d 416 ("[W]e may construe a clear and unambiguous statute if a literal application would lead to an absurd or unreasonable result.") (quotation marks and citation omitted); *Rice v. Ashland County,* 108 Wis. 189, 192, 84 N.W. 189 (1900) ("[I]f, viewing a statute from the standpoint of the literal sense of its language, it is

¶ 40. The majority opinion need not stretch either the text of Wis. Stat. § 51.30(b) or logic to arrive at the correct interpretation of the statute at issue. The majority opinion should be relying (as it sometimes does) on the purpose of the statute derived from its context and legislative history[6] and the consequences of various interpretations,[7] without deceptively characterizing its analysis as a "plain language" analysis.

¶ 41. I agree that in determining the meaning of a statute, a court turns first to the text of the statute. However, the court's inquiry is not limited to the text of the statutory provision. A court considers the statute's purpose,[8] any related provisions or statutes,[9] prior case

unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction.").

*See also* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* (7th ed. 2007) § 45:12, at 101, 107) ("It is fundamental, however, that departure from the literal construction of a statute is justified when such construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question. . . . If one reasonable interpretation of a statute yields absurd results while the other interpretation yields no such absurdities, the latter interpretation is preferred.") (footnotes omitted).

[6] *See* majority op., ¶ 25.

[7] *See id.,* ¶ 22.

[8] *See, e.g., Racine Harley-Davidson, Inc. v. State Div. of Hearings & Appeals,* 2006 WI 86, ¶ 92, 292 Wis. 2d 549, 717 N.W.2d 184 (2006) (construing the statute's terms to be consistent with its express purpose); *State v. Hayes,* 2004 WI 80, ¶ 39, 273 Wis. 2d 1, 681 N.W.2d 203 (2004) ("We therefore turn to an analysis of the purpose[ ] . . . of the statute to determine the interpretation that gives the statute its intended effect.").

[9] *See, e.g., Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 82 (examining other statutory provisions to determine the mean-

law interpreting the statute,[10] statutory history,[11] legislative history,[12] rules (also known as maxims or canons) of statutory interpretation,[13] and other available persuasive material. In doing so, a court aims to give effect to the legislative intent, as the majority opinion recognizes.[14]

¶ 42. As I see this case, Wis. Stat. § 51.30(1)(b) defining treatment records cannot be read in a way that defeats the purpose of § 51.30(4), which is to maintain the confidentiality of certain records. The legislature could not have intended that § 51.30(1)(b) be interpreted in a way that undermines or circumvents the

ing of the statute before the court); *Hayes,* 273 Wis. 2d 1, ¶ 18 (requiring that the statute "be viewed in the context of [the chapter] as a whole").

[10] *See, e.g., State v. Robert K.,* 2005 WI 152, ¶ 30, 286 Wis. 2d 143, 706 N.W.2d 257 (2005) (considering case law as relevant in interpreting a statute).

[11] *See, e.g., Richards v. Badger Mut. Ins. Co.,* 2008 WI 52, ¶ 22; 309 Wis. 2d 541, 749 N.W.2d 581 (strangely viewing statutory history as part of the plain meaning statutory analysis).

[12] *See, e.g., Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 81 (Wis. 2006) (examining the legislative history of the statute to determine its meaning); *Robert K.,* 286 Wis. 2d 143, ¶ 29 (discussing the legislative history, including the drafting records, of a statute to determine its meaning).

[13] *State v. Popenhagen,* 2008 WI 55, ¶ 42, 309 Wis. 2d 601 749 N.W.2d 611 (applying three rules of statutory interpretation).

[14] *See* majority op., ¶ 16.

*State v. Hayes,* 273 Wis. 2d 1, ¶ 16 (2004) ("Additional sources of legislative intent such as the context, history, scope, and objective of the statute, including the consequences of alternative interpretations, illuminate the intent of the legislature.").

carefully drafted legislative provisions set forth in § 51.30(4) limiting access to treatment records.[15] Because the record at issue in the instant case is a copy of another record that indisputably falls within § 51.30(1)(b)'s definition of "treatment records," and is in the police department solely for administrative cost-accounting purposes relating to transportation of persons, the copy must fall within the scope of § 51.30(4), limiting access to "treatment records."

¶ 43. I write separately to set forth a more forthright statutory interpretation.

¶ 44. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[15] *See Popenhagen,* 2008 WI 55, ¶ 87 ("The legislature could not have intended that the statute would be interpreted in such a way to allow circumvention of the carefully drafted legislative requirements and safeguards . . . .").