**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 18, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP406**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV7624

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN EX REL. PETER BERNEGGER,

   PETITIONER-APPELLANT,

   V.

CLAIRE WOODALL-VOGG,

   RESPONDENT-RESPONDENT,

DOE,

   RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, Judge. *Affirmed.*

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Peter Bernegger, *pro se*, appeals a circuit court order dismissing his amended petition for a writ of mandamus against the Executive Director of the City of Milwaukee Election Commission (MEC), Claire Woodall-Vogg. Bernegger sought a court order requiring Woodall-Vogg to provide records in an effort to substantiate his contention that Woodall-Vogg and others "planned, conspired[,] and implemented a massive election fraud" during the November 2020 election. We affirm.

## BACKGROUND

¶2 Bernegger filed a series of multi-part public records requests with MEC in late 2021 and early 2022. The focus of this appeal, however, is limited to three components of one request.[1] The request read:

1. Any and all letters, memos or notices Michael Lawrence and/or Neil Albrect either created, printed or copied and/or sent out distributed on city letterhead, or not on letterhead, conveying the message people could obtain a ballot or vote without showing an ID. Or record used to obtain a ballot by people. Not sure if the two names are spelt [sic] correctly, but think so.

2. Any and all purchase orders, invoices, bills of lading or shipping documents of/from ES&S or their agent, for ballot on demand machines. Whether a purchase, lease, rental or borrowing of such machines. This time period back 2 years from today's date.

3. **The machine tape printouts, the data output via memory cards/sticks or similar memory device, coming out of the machines described in nos. 4 and 5 below.**

---

[1] In her response brief, Woodall-Vogg argued that because Bernegger made "no mention of the other 39 parts of his requests," they were abandoned. Bernegger conceded this point when he did not refute it in his reply brief. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

**Public Records Inspection Request In person:**

4. **All data/information which went into, and came out of the computers, whether laptops or PC[]s, connected to the ballot[-]on[-]demand machines. To mirror the hard drives of them.**

5. **All data/information which went into the ballot[-]on[-]demand machines, and came out. In particular, but not limited to, the two used in the conference room. The room near Jonathan or Jonaton Zuinga (spelling?). Also, any paper ballots which came out of these machines;**

6. The payroll paychecks paid to any and all people who ran those two ballot[-]on[-]demand machines at any time during the November 3rd, 2020 election timeframe. Specifically 1 month prior, to 1 month after.

(Emphasis added; underlining omitted.) In her response, Woodall-Vogg informed Bernegger that MEC had no records that would be responsive to parts 1, 3, 5, and 6 of the request, and a single purchase order was provided to Bernegger in response to part 2. Part 4 was the only part of this request that was denied. Woodall-Vogg did so on grounds that hard drives are not records that would be subject to disclosure under Wisconsin's public records law. Only the forgoing bolded language is at issue on appeal, and, moving forward, we narrow our discussion accordingly.

¶3 After receiving MEC's responses to his requests, Bernegger filed a petition for a writ of mandamus arguing that Woodall-Vogg denied him access to records he requested.[2] He sought to compel Woodall-Vogg to provide him with

_____

[2] As for Respondent Doe, this court notes that it is unclear who Bernegger is referring to and that individual was not the subject of Bernegger's court filings.

3

copies of everything he had requested and additionally asked the court to award him fees, costs, and damages.

¶4 Woodall-Vogg filed a motion to dismiss and argued that Bernegger had not satisfied the elements required for mandamus relief. The circuit court held a hearing on the motion, denied it, and ruled that Bernegger was entitled to discovery.[3]

¶5 Bernegger subsequently filed an amended petition for a writ of mandamus. Following briefing, the circuit court denied Bernegger mandamus relief and dismissed his petition. The court did, however, invite further discussion between the parties to find a compromise as to the request for a hard drive and set a date for the parties to appear the following month. Bernegger failed to appear at that court hearing, and the circuit court indicated that it was dismissing the remainder of Bernegger's petition based on his failure to prosecute. Bernegger appeals.

## DISCUSSION

¶6 Ordinarily, we review a circuit court's decision to grant or deny a petition for a writ of mandamus "under the erroneous exercise of discretion standard." *Watton v. Hegerty*, 2008 WI 74, ¶6, 311 Wis. 2d 52, 751 N.W.2d 369. However, "[w]here a circuit court, determining a petition for a writ of mandamus, has interpreted Wisconsin's Public Records Law ... and has applied that law to

---

[3] The circuit court released a written order after the hearing indicating that it was going to interpret the petition as a complaint and would consider Woodall-Vogg's motion to dismiss in its ultimate ruling on the request for mandamus relief.

undisputed facts, we review the circuit court's decision *de novo*."[4] ***State ex rel. Gehl v. Connors***, 2007 WI App 238, ¶16, 306 Wis. 2d 247, 742 N.W.2d 530; *see also* ***Watton***, 311 Wis. 2d 52, ¶6.

¶7 "Mandamus is an extraordinary legal remedy, and one seeking a writ must establish that it is based on a clear, specific legal right that is free from substantial doubt." ***State ex rel. Lewandowski v. Callaway***, 118 Wis. 2d 165, 171, 346 N.W.2d 457 (1984). A petitioner must show the following four factors in order to obtain a writ of mandamus: "(1) the petitioner has a clear legal right to the records sought; (2) the government entity has a plain legal duty to disclose the records; (3) substantial damages would result if the petition for mandamus was denied; and (4) the petitioner has no other adequate remedy at law." ***Watton***, 311 Wis. 2d 52, ¶8 (footnote omitted). All four of these criteria must be established before a writ of mandamus may be issued. ***State ex rel. Milwaukee Cnty. Pers. Rev. Bd. v. Clarke***, 2006 WI App 186, ¶¶40-42, 296 Wis. 2d 210, 723 N.W.2d 141.

¶8 At the outset, we acknowledge the legislature's declaration of policy that the public records law must be "construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business." WIS. STAT. § 19.31 (2023-24);[5] *see also* ***Gehl***, 306 Wis. 2d 247, ¶16. Wisconsin law strongly and unquestionably favors opening public

---

[4] Bernegger improperly focuses on the standard of review that applies to our review of a motion to dismiss.

[5] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

records to public scrutiny because "a representative government is dependent upon an informed electorate[.]" Sec. 19.31; *see also* **Gehl**, 306 Wis. 2d 247, ¶24.

¶9 However, the right to inspect public records "is not absolute." **Gehl**, 306 Wis. 2d 247, ¶24. Furthermore, the public records law only applies to records that are in existence at the time a public records request is made. *Id.*, ¶13.

¶10 Bernegger takes issue with how Woodall-Vogg responded to parts 3, 4, and 5 of his October 26, 2021 request. Bernegger suggests that he is entitled to relief under WIS. STAT. § 19.37 because Woodall-Vogg "denied" his requests when she told him that the MEC did not have the records he requested; however, as the circuit court pointed out, not having a record that is responsive to a public records request is not a "denial" under the public records law. An authority cannot deny, withhold, or delay access to a record that it does not have. *See **State ex rel. Zinngrabe v. School Dist. of Sevastopol***, 146 Wis. 2d 629, 632-33, 431 N.W.2d 734 (Ct. App. 1988).

¶11 In her response brief, Woodall-Vogg details the information that she provided to Bernegger relative to his requests. Part 3 sought: "The machine tape printouts, the data output via memory cards/sticks or similar memory device, coming out of the machines described in nos. 4 and 5 below." Woodall-Vogg informed Bernegger that MEC did not have any records that were responsive and subsequently averred that "the machines identified do not use tape printouts of memory cards or sticks." Part 5 sought: "All data/information which went into the ballot[-]on[-]demand machines, and came out. In particular, but not limited to, the two used in the conference room. The room near Jonathan or Jonaton Zuinga (spelling?). Also, any paper ballots which came out of these machines[.]" Woodall-Vogg responded:

> [MEC] has no records that are responsive to this part of your request. There is no record of all of the data or information inputted into the laptops used to print blank ballots. Blank ballots themselves are printed from a PDF. Copies of blank ballots that were not used are not "records" subject to disclosure under the public records law, as they are identical copies of otherwise available records. ***Stone v. Bd. of Regents of Univ. of Wis. Sys.***, 2007 WI App 223, ¶20, 305 Wis.2d 679[, 741 N.W.2d 774]. Whereas, copies of ballots used in the November Election are not maintained by the [MEC]. If you would like an example of a blank ballot used in the November 2020 election, please advise.

Regarding Bernegger's request for copies of paper ballots that came out of the ballot-on-demand machines, Woodall-Vogg informed him that all paper ballots used in the November 2020 election were in the possession of the Milwaukee County Election Commission.

¶12 Bernegger's position on appeal seems to be that he believes MEC *should* have had copies of the records he sought. ***Zinngrabe*** addressed the issue of whether a claim that records should have been created could be litigated under the public records law. The court ruled that it could not. "The open records law does not dictate which documents are to be created or direct the government to maintain specific records." ***Id.***, 146 Wis. 2d at 635. Insofar as Bernegger is arguing that Woodall-Vogg failed to create or maintain a record that it should have, he is not entitled to relief under the public records law. *See* ***id.*** ("The duty to maintain such records and the enforcement of such duty must be found elsewhere in the law. Zinngrabe misconceives the purpose and provisions of the open records law by attempting to use the open records law to reach the alleged violation of official duties.").

¶13 We turn to part 4 of Bernegger's October 26, 2021 request, which sought "[a]ll data/information which went into, and came out of the computers,

whether laptops or PC[]s, connected to the ballot[-]on[-]demand machines. To mirror the hard drives of them." Woodall-Vogg informed Bernegger that public records law does not require authorities to provide copies of entire databases or hard drives.

¶14     WISCONSIN STAT. § 19.32(2) defines the term "record" as follows:

> "Record" means any material on which written, drawn, printed, spoken, visual, or electromagnetic information or electronically generated or stored data is recorded or preserved, regardless of physical form or characteristics, that has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed, or printed pages, maps, charts, photographs, films, recordings, tapes, optical discs, and any other medium on which electronically generated or stored data is recorded or preserved. "Record" does not include drafts, notes, preliminary computations, and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials that are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent, or bequest; and published materials in the possession of an authority other than a public library that are available for sale, or that are available for inspection at a public library.

As the circuit court correctly noted, "[c]learly, documents that constitute records may be found on hard drives. However, other documents that are not considered records … [may also be] found on hard drives." The court continued, and we agree, that "[t]here may be records on the hard drive, but the hard drive itself is not a record."

¶15     To conclude that a hard drive is a record would be an absurd interpretation of the statutory definition of what constitutes a "record." *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutes are to be interpreted to avoid absurd or

unreasonable results). Bernegger had no legal right to view the hard drives in their entirety and Woodall-Vogg had no plain legal duty to disclose them.

¶16 Bernegger claims that Woodall-Vogg overemphasizes the portion of his request that MEC "mirror the hard drives." Although he specifically asked to inspect mirrors of the hard drives of the computers connected to the ballot-on-demand machines, Bernegger argues that what he meant was that what he wanted to inspect was all the data and information that went into and out of those computers. Bernegger argues that the circuit court ignored 97% of what he was asking for and improperly focused on the part of his request where he explicitly stated that what he wanted to inspect were mirrors of hard drives. Contrary to Bernegger's position, Woodall-Vogg was not required to guess at what Bernegger wanted or to know which words in his request were to be ignored. *See Seifert v. School Dist. of Sheboygan Falls*, 2007 WI App 207, ¶42, 305 Wis. 2d 582, 740 N.W.2d 177 ("A custodian should not have to guess at what records a requester desires.").[6]

¶17 Bernegger additionally challenges the circuit court's ruling dismissing the remainder of his mandamus petition based on his failure to prosecute. The order was entered after the court scheduled a follow-up hearing with regard to part 4 of the October 26, 2021 request to see whether some form of compromise was possible. Woodall-Vogg argues that despite any subsequent efforts to help the parties arrive at a compromise, the court's earlier order was

---

[6] We note in passing that throughout his appellate briefing, Bernegger indicates that the circuit court dismissed his petition by relying on MEC's previously denied motion to dismiss. This is inaccurate. The circuit court dismissed the underlying petition after determining that Bernegger was not entitled to mandamus relief.

final, making its subsequent ruling as to Bernegger's failure-to-prosecute a non-issue. We agree. Moreover, because we have already concluded that Bernegger was not entitled to mandamus relief, there is no need for this court to further discuss whether he failed to prosecute his claim. "Issues that are not dispositive need not be addressed." *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.[7]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Woodall-Vogg includes a one-sentence request for costs and attorney's fees in her brief. She does not cite any legal authority for this request. If Woodall-Vogg seeks attorneys' fees pursuant to WIS. STAT. RULE 809.25(3), we note that she has not filed a separate motion for such award as is required. *Howell v. Denomie*, 2005 WI 81, ¶19, 282 Wis. 2d 130, 698 N.W.2d 621. To the extent costs are recoverable, the procedure is set forth in RULE 809.25(1)(c).